**Tonya Jean DAUGHERTY, Appellant**

v.

**The STATE of Texas.**

**No. PD–1717–11.**

Court of Criminal Appeals of Texas.

Jan. 9, 2013.

Ryan Johnson, The LeCrone Law Firm, Sherman, TX, for Tonya Jean Daugherty.

Emily Johnson–Liu, Assistant District Attorney, McKinney, Lisa C. McMinn, State's Attorney, Austin, TX, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J. and PRICE, WOMACK, JOHNSON, and ALCALA, JJ., joined.

Appellant signed a construction-service contract with a general contractor to build out office space for her and her husband's window-tinting company. Appellant wrote a $1,657 check as a deposit. The rest of the approximately $48,000 contract price was not due until the project was completed. At that time, however, appellant no longer had the money to pay the contractual debt. She gave the contractor an "insufficient funds" check. A jury convicted her of theft of services for obtaining the contractor's service by deception when she gave him the insufficient-funds check after he had completed the build-out. The court of appeals reversed the jury's verdict and rendered a judgment of acquittal because it determined that the evidence was legally insufficient to support the conviction.[1] We granted the State's petition to decide whether the failure to prove that appellant secured the performance of the contract with a "worthless check" was merely an immaterial variance under *Gollihar*[2] or whether the State failed to prove the essential element that an act of deception secured performance of the contractor's services.[3] We conclude that the State failed to prove the offense of theft of service by deception, so we affirm the court of appeals.

### I.

On April 16, 2008, appellant and her husband, Paul Daugherty, entered into a contract with a general contractor, Gary Bailey, for Mr. Bailey to finish out office space for the Daughertys' window-tinting

---

1. *Daugherty v. State,* No. 05–10–00832–CR, 2011 WL 3690052, at *3 (Tex.App.-Dallas Aug.24, 2011) (not designated for publication).

2. *Gollihar v. State,* 46 S.W.3d 243 (Tex.Crim. App.2001).

3. The State's sole ground for review is as follows:

This Court held in *Cada v. State* that "immaterial variance" law as set out in *Gollihar* does not apply to the specific statutory elements alleged in the indictment. But what happens when the allegation at issue is not a statutory element and not part of the definitions of the offense but originates from another statute entirely? Does *Gollihar*'s two-part test for materiality apply?

business. The contract was for a little more than $48,000 in all. In accordance with Mr. Bailey's normal practice, his contract stipulated that the company, Expertint, would pay a small deposit up front and then pay the "lion's share" when the project was completed and a certificate of occupancy obtained. According to the contract, it was supposed to be a thirty-day job with the build-out completed by June 7th. The Daughertys' landlord would pay the major portion of the build-out, some $32,000, while the Daughertys, as tenants, would pay about $16,000.

Appellant gave Mr. Bailey a check for $1,657 for the deposit on April 16th. Mr. Bailey successfully deposited that check in his bank, but he could not obtain the necessary building permits for over a month. Therefore, the project was significantly delayed. Mr. Bailey finished the build-out on July 2nd, but he did not obtain the certificate of occupancy until July 10th. He said that he called the Daughertys about a week before "because I knew we were virtually there, everything was looking good." He called them to make sure that they had enough "time to make arrangements" if they were short of money at that moment. The Daughertys assured him that they would be able to make the payment. But, in fact, the Daughertys had spent the Expertint money that they had intended to use for the payment of the build-out on personal living expenses during the construction delay. At trial, appel-

lant explained that "we had to use the money that we did have in the account to support our—pay our bills, pay our living expenses, so the money we did have in the beginning to pay [Mr. Bailey] for the services, actually prepay, got ate up with the delay in the building."

Mr. Bailey met the Daughertys at a local Starbucks on July 14th, and they gave him two checks: one was for the landlord's portion of the build-out and the other—a check for $15,871—for their own portion. Appellant wrote out the two checks on the Expertint company account.[4] The Daughertys told Mr. Bailey that "funds were deposited" in the account; Paul said that the money was coming from American Express. When Mr. Bailey took the checks to the bank two days later, the money was not there. Mr. Bailey called Paul, and then went back to the bank again three or four days later and tried again, but without success. Mr. Bailey called Paul once more, and Paul assured Mr. Bailey that the problem was being taken care of, but it was not. Eventually, Mr. Bailey contacted the "hot check" division of the Collin County D.A.'s Office.

D.A. Investigator Gary Cochrane testified that he tried to resolve the check problem with appellant.[5] She told him that she wrote the check that bounced and that she owed Mr. Bailey the contractual debt. She said that she could pay the debt over time, so they discussed a possible

4. According to appellant, the Daughertys' landlord was out of town at this time, so he could not write a check for his portion of the build-out. Eventually, the landlord did pay his portion in return for Mr. Bailey's release of a contractor's lien against the property. Appellant testified that she knew that Expertint did not have the funds to cover the check in the bank on (or any time after) July 14th, but she wrote the two checks to make Mr. Bailey "feel better about the situation" and to reassure him that he would be paid.

5. When shown Defendant's Exhibit 4, a printout of the Internet website for the Collin County District Attorney's Hot Check Division, Mr. Cochrane agreed that the website states that "the D.A's Office cannot accept the following kinds of checks for prosecution: ... Checks where no goods, products or services were given in **immediate** exchange ... [or] checks given to pay a pre-existing debt."

payment plan with a quarter down followed by three monthly payments. Appellant agreed to the plan, and she brought $3,500 of the $4,000 down payment to their meeting. She made the next monthly payment a few days late, but she did not make the last two payments. She explained that their company, Expertint, went out of business when the build-out wasn't completed on time. Appellant admitted that, "like a lot of folks," she and her husband were affected by the economy in 2008. The total restitution that appellant paid was $7,658.67. When appellant couldn't pay the remainder of the restitution, the State filed charges of theft of service by deception.

The indictment read that appellant, on or about July 14, 2008,

> by deception, threat, or false token: to wit: by issuing and passing a check, when the defendant did not have sufficient funds in and on deposit with the bank for the payment in full of the check as well as other checks then outstanding, intentionally and knowingly secure performance of a service, namely, construction services, of the value of at least Fifteen Hundred Dollars ($1,500.00) but less than Twenty Thousand Dollars ($20,000.00) from Gary Bailey, intending to avoid payment for the service and knowing that the service was provided only for compensation.

Put more simply, the State alleged that appellant secured the performance of Mr. Bailey's construction services by the de-ceptive act of giving him a bad check on or about July 14, 2008. A jury convicted appellant of that offense and sentenced her to one year confinement in the State Jail Division, probated for two years, and restitution of $8,317.33.

The court of appeals reversed appellant's conviction and entered a judgment of acquittal. It relied on *Cortez v. State,*[6] and *Gibson v. State,*[7] in concluding that "any deception committed 'by issuing and passing a check, when the defendant did not have sufficient funds in and on deposit,' as alleged in the indictment, was incapable of affecting Bailey's judgment with regard to the construction services he had already completed."[8] The court of appeals followed our well-established precedent that holds that the deceptive act must occur before, not after, the other person has performed his service.[9]

## II.

Under Texas Penal Code Section 31.04(a), the theft-of-services statute, the State is required to prove the following:

1) The defendant had the intent to avoid payment for a service that she knows is provided only for compensation, and

2) acting with that intent, she intentionally or knowingly

3) secured the other person's performance of a service

4) by deception.[10]

---

6. 582 S.W.2d 119 (Tex.Crim.App.1979).

7. 623 S.W.2d 324 (Tex.Crim.App.1981) (op. on reh'g).

8. *Daugherty v. State,* 2011 WL 3690052, at *2 ("Any deception that occurs after the other person has completed performance of the service allegedly stolen would not meet this requirement [of affected the judgment of another in the transaction]: once the other person has completed performance of his obligations in the transaction, any later deception would be incapable of affecting retrospectively his judgment in what he has already completed.").

9. *Id.* at *3 (citing *Gibson* and *Cortez* ).

10. Tex. Penal Code § 31.04(a)(1) ("A person commits theft of service if, with intent to avoid payment for service that the actor

All of these elements must occur at the same time. The defendant must have "secured" the victim's services—here, Mr. Bailey's construction work—by an act of deception.[11] That is, the proof must be that (1) Mr. Bailey relied upon appellant's *prior* act of deception when he performed his build-out services, and (2) appellant had no intent to pay Mr. Bailey for his services at the moment that she committed that deceptive act.[12]

■ When the indictment alleges theft of services by "deception" through the issuance of a bad check, proof that the check was issued *after* the performance of the

services will not support a conviction for theft of services.[13] The defendant's "deception"—issuing a check that she implicitly or explicitly claims will be honored by the bank—must be such as is likely to affect the judgment of the service provider, *i.e.*, to induce him to perform the service.[14] But once the service provider has completed his contractual performance, his judgment in what he has already completed cannot be retrospectively affected by any purported deception, such as issuing a worthless check.[15]

■ Why is this timing important? Criminal liability depends upon a person's

---

knows is provided only for compensation: . . . the actor intentionally or knowingly secures performance of the service by deception, threat, or false token[.]'").

11. The term "deception" for purposes of the theft of services statute means:
(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;
(B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;
(C) preventing another from acquiring information likely to affect his judgment in the transaction;
(D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or
(E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not

intend to perform or knew the promise would not be performed.
*Id.* at § 31.01(1).

12. Theft of service by deception requires proof of purpose. The defendant must have the purpose to "obtain the services" of another, and she must simultaneously have a purpose to deceive. "If the actor believes in the accuracy of the impression he seeks to convey, he will not be guilty of a violation of Section 223.3 [theft by deception] even if his belief is unreasonable." ALI, MODEL PENAL CODE § 223.3 cmt. at 181 (1980).

13. *Gibson*, 623 S.W.2d at 326 (evidence that defendant "presented a check to a hotel for services previously rendered . . . 'could not have affected the judgment of the complaining witness in the delivery of the services allegedly stolen' because the check was presented after the services had been rendered.' "); *Cortez*, 582 S.W.2d at 120–21 (stating that any deception that occurs after the service provider has completed performance will not meet the requirement of theft of service by deception; "once the other person has completed the performance of his obligations in the transaction, any later deception would be incapable of affecting retrospectively his judgment in what he has already completed.").

14. *Gibson*, 623 S.W.2d at 326; *Cortez*, 582 S.W.2d at 120–21.

15. *Id.*

culpable mental state at the time the person performs some criminal act and is the convergence of a bad act and a guilty mind.[16] Theft of service by deception requires that the defendant intend to defraud the service provider before that person provides the service, and the defendant must commit some act of deception—lying about her bank account, giving the service provider a bad check, promising to pay a leasing contract when the defendant has no intent to do so, etc.—that is likely to affect the judgment of the service provider.[17] And the service provider must have actually relied upon that deceptive act in providing the service.[18]

■ In sum, the deception must occur *before* the service is rendered, and that deceptive act must induce the other person to provide the service. The other person must rely upon the defendant's deceptive act in providing the service.[19]

## III.

■ In this case, appellant, like the defendants in *Cortez* and *Gibson,* wrote a bad check *after* the service provider had completed his performance. That check could not have affected Mr. Bailey's judgment in performing his services to renovate appellant's office space. He was already done with the job.[20]

16. Tex. Penal Code § 6.02(a); *see, e.g., Cook v. State,* 884 S.W.2d 485, 487 (Tex.Crim.App. 1994) ("[I]n order to constitute a crime, the act or *actus reus* must be accompanied by a criminal mind or *mens rea* "); *Peterson v. State,* 645 S.W.2d 807, 811 (Tex.Crim.App. 1983) (to constitute theft, intent to deprive owner must exist at time property is taken); *see generally,* 3 Wayne R. LaFave, Substantive Criminal Law § 19.7(g) (2d ed.2003) ("In the light of the basic criminal-law principle that the mental and physical elements of the crime must coincide, the knowledge of the falsity of the statement and the intent to defraud must coincide with the obtaining of the title to the property" in theft by deception statutes) (citations omitted).

17. This requirement, that the deceptive act be one that is likely to affect the judgment of the other person, is meant only to test the relationship between the defendant's falsehood and the transaction to determine if a deception exists. Some falsehoods, after all, are not likely to affect a service provider's judgment in the transaction. Only if the jury finds a deceptive act that is likely to affect the judgment of the service provider, must it then consider whether there was reliance, *i.e.,* whether the other person provided the service because of that act of deception. *See State v. LeFevre,* 825 P.2d 681, 686 n. 9 (Utah Ct.App. 1992).

18. *See Swope v. State,* 723 S.W.2d 216, 223 (Tex.App.-Austin 1986), *aff'd on other grounds,*

805 S.W.2d 442 (Tex.Crim.App.1991) (concluding that reliance upon the defendant's deception is an element of theft by deception). That reliance need not be the sole, or even controlling, reason why the victim decided to provide the service, but it must be a substantial or material factor in the decision-making process. *See, e.g., LeFevre,* 825 P.2d at 686–87 (concluding that the victim "need only have materially relied on the resulting deception"); *State v. Schneider,* 148 Ariz. 441, 715 P.2d 297, 300 (Ariz.Ct.App.1986) ("The deceit must be 'material' to constitute the offense, in the sense that it must be a significant factor in the transaction"); *State v. Finch,* 223 Kan. 398, 573 P.2d 1048, 1052 (1978) (in a theft-by-deception prosecution, "the state must prove that the victim was actually deceived and relied in whole or in part upon the false representation").

19. *See Garcia v. State,* 669 S.W.2d 169, 171 (Tex.App.-Dallas 1984, pet ref'd) (defendant's act of giving store clerk a stolen credit card without any intent to pay for ring affected the clerk's judgment in giving him a ring during the transaction).

20. *See Huse v. State,* 180 S.W.3d 847, 850 (Tex.App.-Eastland 2005, pet. ref'd) ("[I]f one simply pays for a completed transaction with an insufficient-funds check, no violation is shown. On the other hand, if one prepays for services with that same check, the [theft of services] statute is implicated. The distinction is the vendor's reliance. The statute re-

On appeal, the State admitted that appellant did not commit theft of service by writing a worthless check after Mr. Bailey had completed his work. Instead, the State suggests that its allegation and proof of the alleged deceptive act as being appellant's bad check is just an immaterial variance which should be ignored. The State now argues that the jury could have found that appellant committed theft by deception under an entirely different theory with a different deceptive act at a different time.[21]

Under this new theory, appellant's deceptive act was that she failed to tell Mr. Bailey that she and her husband had already spent the money that was allocated for the office renovations on personal expenses. Although they did have the money to pay for the building contract at the time she signed the contract, they had spent all of that money before Mr. Bailey had finished his work. Thus, according to the State, the jury could have found that she failed to correct a false impression—that she still had the money to pay for the contract—during the time Mr. Bailey performed his part of the contract.[22] Under this theory, appellant did not commit theft of services at the time she entered into the contract with Mr. Bailey,[23] and she did not

quires proof that the appellant *secured* services with a deceptive act.").

21. The State summarizes its argument as follows:

Under *Malik* and *Gollihar*, evidentiary sufficiency should be measured against the essential elements of the crime as defined by the hypothetically correct jury charge. The hypothetically correct jury charge is one that is based in the indictment, accurately sets out the law that is authorized by the indictment, adequately describes the offense, and disregards variances that are immaterial under a two-part test adopted in *Gollihar*. Accurately setting out the law as authorized by the indictment requires that when the indictment narrows the list of possible statutory alternatives for proving the offense, the State is bound to prove the statutory alternative it alleges, regardless of materiality.... The only portion of the indictment the State did not prove as specifically alleged was that the worthless check secured Bailey's performance. But this allegation at issue here was not statutory at all, but merely evidentiary.... Because the allegation at issue did not describe the allowable unit of prosecution, the State's failure to prove the allegation could not have rendered the evidence insufficient.

But the State fails to focus on the importance of alleging and proving the deceptive criminal act that it is relying on. Because a crime is composed of a bad act and a guilty mind, the State must plead and prove the "bad act" that it is relying on.

22. The State argues,

The indictment alleged Appellant secured Bailey's services by deception by giving Bailey a worthless check. At trial, the State proved Appellant secured Bailey's services by standing silently by as Bailey performed under the contract, knowing she had spent the money she intended to pay him with, and by falsely reassuring him a week before he completed his service that she had the money to pay him. Both variations involve precisely the same statutory language in the theft-of-service offense.

State's Brief at 19.

23. If the State had evidence that appellant *never* intended to pay for Mr. Bailey's services, or that she specifically knew that she would not be able to pay for his services at the time that she signed the contract, the State could have pled and proven "deception" under Section 31.01(1)(E) of the Penal Code. That section states that "deception" means

promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except the failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

TEX. PENAL CODE § 31.01(1)(E). The evidence that appellant had the money to pay for the services at the time she signed the contract and that she paid the contractual deposit with a valid check is some evidence that she did intend to perform the contract at the time she signed. The State points to no evidence sug-

commit theft of services when she wrote the worthless check after he had completed his work. Instead, according to this theory, she committed theft by (1) failing to tell Mr. Bailey to stop work on the contract because she had already spent the funds allocated for his contract on personal living expenses;[24] and/or (2) reassuring Mr. Bailey, the week before he was done with his performance, that she would have the money to pay the contract.[25] But the State neither pled nor proved these purported acts of deception.

According to the State, once it pled the word "deception" in the indictment, any further description of the specific deceptive act was sheer lagniappe and should be ignored. It was, under this argument, irrelevant that the State had pled one specific act of deception—issuing a worthless check—and the jury returned a verdict concerning that one specific act. Indeed, the jury charge contained a full page of instructions dealing very specifically with "insufficient funds" checks, and the statutory presumption of intent to avoid payment set out in Section 31.04(b) and (c). The State argues that the jury charge may be ignored and the jury's verdict could be upheld by evidence of entirely different acts of purported deception at entirely different times—ones that did not involve any check. But even if our "immaterial variance" law allowed such a dramatic variance from the indictment, jury charge, and proof, there is no evidence that Mr. Bailey

gesting that she did not intend to pay for Mr. Bailey's services (or knew then that she would not be able to pay) at the time she signed the contract. Indeed, the D.A. investigator's testimony that appellant always acknowledged the contractual debt, agreed to pay that debt, and did pay half of it is some evidence that she always intended to pay the contractual debt and therefore never intended to obtain Mr. Bailey's services without paying for them. The fact that she could not pay this debt is not legally sufficient to prove that she never intended to pay. *Id.* ("failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.").

24. This is like holding the homeowner criminally liable for failing to tell the electric company that he lost his job and won't be able to pay the electric bill when it is due next month, so the electric company can turn off the electricity before the bill is due.

25. If the State had wanted to prove that Mr. Bailey completed his performance under the contract only because the Daughertys reassured him the week before he was done that they would have the money to perform their end of the contract, the State could have pled and proven "deception" under Section 31.01(1)(B). That section states that "deception" means

failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe is true.

Tex. Penal Code § 31.01(1)(B). Under this theory, appellant could be criminally liable only for that portion of the service Mr. Bailey performed after he had called the Daughertys and they assured him that he would be paid. Perhaps Mr. Bailey might have testified that his judgment concerning the performance of his last week's worth of construction services was affected by the Daughertys' false reassurance that he would be paid. But Mr. Bailey was never asked that question, so we do not know what he would have said. And we do not know the value of that last week's worth of service. Furthermore, under the terms of the written contract, appellant did not owe Mr. Bailey any money beyond the initial deposit until and unless he completed the project and obtained the certificate of occupancy. Had he stopped work, this might constitute an anticipatory breach of the contract on his part. In any event, whether appellant's assurance to Mr. Bailey in early July that he would be paid when he finished his part of the contract would be sufficient to establish an act of deception under the statute is not before us because there is no evidence that Mr. Bailey relied upon that assurance in completing his end of the contract.

relied upon those specific acts in completing his contractual performance.[26]

Appellant breached her contract with Mr. Bailey. She still owes him the money that she promised to pay under that contract. But this routine civil breach of contract case does not give rise to a criminal conviction for theft of services. The court of appeals correctly held that the evidence was insufficient to support appellant's conviction. We therefore affirm the judgment of the court of appeals.

HERVEY, J., filed a dissenting opinion in which MEYERS and KEASLER, JJ., joined.

HERVEY, J., filed a dissenting opinion in which MEYERS and KEASLER, JJ., joined.

I respectfully disagree with the disposition of this case. Today the majority holds that there is insufficient evidence to prove that Appellant committed theft by deception. But in so holding, the majority ignores key evidence and neglects the ground upon which we granted review.

On April 16, 2008, Appellant entered into a construction contract with Gary Bailey to finish out a newly rented office space. The contract was for "$48,251 plus or minus any approved change orders," of which the Appellant's landlord agreed to pay $32,040.00.[1] On the day the contract was executed, Appellant wrote a check for $1,657.00. Bailey went to his bank on the same day and deposited the check, which cleared.

The construction contract provided that substantial completion was to occur "on or about June 7, 2008 (apx 5 weeks after issuance of building permit)." However, Bailey testified that approximately a month and a half passed after the contract's execution before the city issued a permit and he could begin the work. In the meantime, Appellant had spent the money that she intended to pay Bailey on her own personal expenses. On May 31, 2008, Appellant's bank account had a balance of $1,870.59. Thus, she did not have the money in her account to pay Bailey the roughly $15,000 owed, but she did not inform him of this. Meanwhile, Bailey hired subcontractors and began the thirty-day construction project.

When he was one week away from completing the work, Bailey called Appellant to make sure that she would have proper payment arranged by the time of completion, and Appellant assured him that he would be paid. Records showed that Appellant's bank account balance was only $1,839.84 on June 30, 2008. Bailey completed the work on July 3, 2008, and then obtained a certificate of occupancy from the City of Frisco on July 10, 2008. There was no work performed on the contract after July 10. According to the contract, the remaining balance owed for the services was then due,[2] so arrangements were made for Bailey to meet with Appellant and her husband on July 14, 2008. At the meeting, Appellant gave Bailey two checks to cover the work completed, one for $15,871.00 for her portion of the cost and

---

**26.** See *Gibson v. State,* 623 S.W.2d 324, 330–31 (Tex.Crim.App.1981) (op. on reh'g) (explaining that State could not support theft-of-services conviction on an entirely different theory of deception than that which the State had pled and proven at trial).

**1.** Appellant testified that, per their lease agreement, the landlord would pay a portion of the remodeling work done to the building.

**2.** The contract provided that the final payment "shall be made after substantial completion of the project (Final and CO city inspections)."

another to cover her landlord's portion.[3] Appellant testified that she was aware at the time she wrote the checks that she had insufficient funds to cover them, but that she wrote them because she was "wanting [Bailey] to feel better about the situation" and to believe that he would be paid.

Bailey testified that when he attempted to deposit the $15,871.00 check several days later, he was informed by his banker that there were insufficient funds to cover the check.[4] After speaking with Appellant's husband, Bailey returned to the bank three to four days later, and he again learned that there were insufficient funds to cover the check. Bailey spoke to Appellant again and was assured that there would be funds to cover the check. Bailey then went to the bank a third time and was told that there were insufficient funds to cover the check. After speaking to Appellant's husband one final time, Bailey was assured that the funds for the check were being taken care of, and he deposited the check. The next day, the check was returned for insufficient funds. Bank records revealed that at no point from May 31, 2008, through September 2008 did Appellant have sufficient funds in her bank account to cover a $15,000 check.

Bailey testified that he sent Appellant a demand for payment in full, dated August 5, 2008, that included notice that failure to pay within ten days creates a presumption of committing an offense. *See* TEX. PENAL

CODE § 31.04(b)(2). When Bailey did not receive payment, he referred the matter to the hot check division of the Collin County District Attorney's Office. Gary Cochrane, an investigator for the hot check division, testified that Appellant worked with the D.A. to set up a payment plan, and under the agreement, Appellant admitted knowing that she lacked the funds in the bank to cover the checks when she wrote them.[5] Cochrane stated, and payment records support, that Appellant paid around $7,658.67 in restitution, but when she failed to make the appropriate payment,[6] Cochrane referred the case to the grand jury division.

Subsequently, Appellant was indicted for theft of services. The indictment alleged that Appellant did

> by deception, threat, or false token, to-wit: by issuing and passing a check, when the defendant did not have sufficient funds in and on deposit with the bank for the payment in full of the check as well as all other checks then outstanding, intentionally and knowingly secure performance of a service, namely, construction services, of the value of at least Fifteen Hundred Dollars ($1,500.00) but less than Twenty Thousand Dollars ($20,000.000), from Gary Bailey, intending to avoid payment for the service and knowing that the service was provided only for compensation.

---

3. The landlord eventually paid his portion, so charges were pursued only on the $15,871.00 check.

4. The trial record shows that Bailey and Appellant both banked at Compass Bank, but they used different branches.

5. The payment plan agreement shows that Appellant initialed next to the following language: "I admit and acknowledge that I signed and issued all of the checks as referenced on the attached list, and I knew at the

time I signed and issued those checks that I did not have sufficient funds in the bank to pay those checks...."

6. Appellant agreed to make a down payment of $4,000 and three separate payments of $3,992.00. However, when she made an initial down payment of $3,500, the remaining payments were adjusted to $4,158.67 each. Appellant made a single payment of $4158.67 and then ceased making payments.

At trial, after the State rested its case, Appellant moved for a directed verdict of not guilty on the grounds that there was insufficient evidence to support that the services were secured by deception. Appellant claimed that the deception, if any, occurred after the services were secured and, thus, Section 31.04(a)(1) of the Texas Penal Code was not violated as the State charged. The trial court denied Appellant's motion.

In the jury charge, the State relied on the statutory definitions of deception contained in Section 31.01(1) of the Texas Penal Code. Accordingly, the jury was instructed that

"Deception" means:

(1) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

(2) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;

(3) preventing another from acquiring information likely to affect his judgment in the transaction;

(4) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or

(5) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

The jury returned a verdict of guilty. The trial court sentenced Appellant to one year confinement (probated for two years), $8,317.33 restitution, 100 hours of community service, and completion of an anti-theft course. The Dallas Court of Appeals reversed the trial court's judgment and entered a judgment of acquittal after determining that the evidence was insufficient to support Appellant's conviction. *Daugherty v. State*, No. 05–10–00832–CR, 2011 WL 3690052, at *8, 2011 Tex.App. LEXIS 6770, at *8 (Tex.App.-Dallas Aug. 24, 2011) (not designated for publication).

The State appealed to this Court, and we granted discretionary review to specifically address the following issue:

This Court held in *Cada v. State* that "immaterial variance" law as set out in *Gollihar* does not apply to the specific statutory elements alleged in the indictment. But what happens when the allegation at issue is not a statutory element and not part of the definitions of the offense but originates from another statute entirely? Does *Gollihar*'s two-part test for materiality apply?

Although we granted review on this ground, which focuses on variance law, the majority gives minimal attention to that issue. *See* Maj. Op. at 661–62. As I will explain, the variance issue is critical to determining whether the evidence here meets the legal sufficiency standard—this Court must first determine whether there was a variance between the allegations of the indictment and the proof offered at

trial. *Gollihar v. State,* 46 S.W.3d 243, 246 (Tex.Crim.App.2001).

In assessing the legal sufficiency of the evidence to support a conviction, we analyze "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To determine "the essential elements of the crime," we look to the hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* The law as "authorized by the indictment" includes the statutory elements of the offense "as modified by the charging instrument." *Curry v. State,* 30 S.W.3d 394, 404 (Tex.Crim.App.2000).

The hypothetically correct jury charge does not necessarily have to track all of the charging instrument's allegations—"a hypothetically correct charge need not incorporate allegations that give rise to *immaterial* variances." *Gollihar,* 46 S.W.3d at 253, 256 (emphasis added). A variance occurs when there is a discrepancy between the charging instrument and proof at trial. In such a situation, "the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Id.* at 246. A vari-

ance between the wording of the indictment and the evidence presented is fatal only if it is material[7] and prejudices the defendant's substantial rights. *Id.* at 257.

Therefore, to determine whether the evidence meets the legal sufficiency standard, this Court must first determine whether there was a variance between the allegations of the indictment and the proof offered at trial. *Gollihar,* 46 S.W.3d at 246.

In this case, the indictment specifically alleged that Appellant, "by deception, threat, or false token, to-wit: by issuing and passing a check, when the defendant did not have sufficient funds in and on deposit with the bank for the payment in full of the check as well as all other checks then outstanding, intentionally and knowingly secure performance of a service, namely, construction services...." I agree with the majority that Appellant's issuance of the bad check (*alone* ), as alleged in the indictment, could not have secured Bailey's services because the check was not written until the services were rendered. *See Cortez v. State,* 582 S.W.2d 119, 120–21 (Tex. Crim.App.1979) ("Obviously any deception that occurs after the other person has completed performance of his obligations in the transaction, any later deception would be incapable of affecting retrospectively his judgment in what he has already completed."); *see also Gibson v. State,* 623 S.W.2d 324, 329–31 (Tex.Crim.App.1981) (op. on reh'g). In this case, however, there is evidence of deception long before, and continuing through, the issuance of a bad check. *Cf. Cortez,* 582 S.W.2d 119 (holding that there was no evidence of deception by which the appellant secured performance of the service when the *only*

---

**7.** In assessing materiality, we ask two questions: first, "whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial" and, second, "whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime." *Id.* at 248

evidence presented showed that the appellant issued a bad check upon completion of the services). Because the instant indictment stated that the services were secured with an insufficient funds check, an issue has developed as to whether other evidence of deception offered by the State was sufficient proof of theft by deception, thus creating a variance.

This Court has recognized three different categories of variance. The variance in this case falls into the third category identified in *Johnson*, that with respect to "an immaterial, non-statutory allegation." *Johnson*, 364 S.W.3d at 299.[8] It neither refers to the statutory language that defines the offense[9] nor involves a non-statutory allegation that describes an allowable unit of prosecution.[10] Variance in the third category is immaterial and, therefore, does not render the evidence legally insufficient. *Id.* at 298, 299 ("Variances such as this can never be material because such a variance can never show an 'entirely different offense' than what was alleged.").

The theft of services statute provides several means by which the offense may be committed. TEX. PENAL CODE § 31.04.

The State alleged only one of those means—theft by deception. Thus, the State was required to prove only that Appellant "intentionally or knowingly secured performance of the service by deception." *Id.* § 31.04(a)(1). Although the State used language from Texas Penal Code Section 32.41(a) in the indictment, that description did not become an element of the statute charged. It was merely a descriptive averment of the specifically pled manner and means, and it was not a statutory alternative of the controlling statute of theft of service. *Cf. Geick v. State*, 349 S.W.3d 542, 547 (Tex.Crim.App.2011) (holding that the State was bound to prove theft by deception, rather than theft alone, when it alleged the more narrow offense by choosing to specifically plead one of five possible circumstances that make consent ineffective).

And indeed the State proved that which it was required to prove: that Appellant "intentionally or knowingly secured performance of the service by deception." TEX. PENAL CODE § 31.04(a)(1). The State presented evidence of a continuum of actions and events reflecting deception by

---

8. This Court identified the variance in *Johnson* as belonging to the third category. There, the State charged the defendant with causing bodily injury by hitting the victim with his hand or twisting her arm, but it proved that the defendant threw the victim against the wall, which caused her to break her arm. *Johnson*, 364 S.W.3d at 293. We determined that, because the variance did not describe the focus or gravamen of the offense and "[t]he precise act or nature of conduct in this result-oriented offense is inconsequential," it did not rise to the level necessary to be material. *Id.* at 298. Variance in the third category is immaterial and, therefore, does not render the evidence legally insufficient. *Id.* at 299.

9. *Johnson*, 364 S.W.3d at 294; *see, e.g., Cada v. State*, 334 S.W.3d 766, 768 (Tex.Crim.App.2011)(holding that a material

variance existed when the indictment alleged one statutory alternative, that the victim was "a witness," but proof was offered of another statutory alternative, that the victim was either "a prospective witness" or "an informant"); *see also Geick v. State*, 349 S.W.3d 542, 547–48 (Tex.Crim.App.2011).

10. *Johnson*, 364 S.W.3d at 298; *see, e.g., Byrd v. State*, 336 S.W.3d 242 (Tex.Crim.App.2011). There are two gravamina for the crime of theft (the property or service and the ownership), which in combination can be used to determine the allowable unit of prosecution. *See Johnson*, 364 S.W.3d at 297. The language at issue in this case neither describes the services stolen nor details the ownership of the services stolen. It merely describes the means by which Appellant committed deception.

Appellant to secure Bailey's performance, much of which the majority downplays or completely ignores. The issuance of the worthless check was simply the final act of deception. The State showed that as early as May 31 (when the construction work was just beginning) and continuing until trial, Appellant's bank account never carried a balance large enough to cover the approximately $15,000 promised under the contract; that by the time work began in earnest at the end of May or the beginning of June, she knew that she did not have the money to pay the contract but did not inform Bailey of such and continued to spend the money on her personal expenses; and that a week before Bailey completed the construction work, Bailey called Appellant to ensure that she and her husband would have the money to pay him, and Bailey was assured that he would be paid. All of these acts occurred before services were complete, that is, before Bailey completed construction and then conveyed the certificate of occupancy to Appellant.[11]

The definitions of deception provided by Section 31.01(1) of the Texas Penal Code, except for one not relevant here, require that the deception "affect the judgment of another in the transaction." TEX. PENAL CODE § 31.01(1). The majority mistakenly claims that the State failed to prove any such deception. Because services were still outstanding when the identified acts occurred, Appellant's actions could have affected the judgment of Bailey and, thus, satisfied the statutory definitions of deception. Therefore, unlike *Cada v. State*, 334 S.W.3d 766, 768 (Tex.Crim.App.2011), in which the State pled one statutory alterna-

tive (the victim was a "witness") but offered evidence of another statutory alternative (the victim was a "potential witness" or an "informant"), the State in this case alleged theft of services by deception (*i.e.*, that Appellant secured performance of service by deception) and then offered evidence of the same.

The majority contends that even if our "immaterial variance" law allowed this variance from the indictment, the fact remains that the State was still not able to prove beyond a reasonable doubt that Appellant secured services through any form of deception. *See* Maj. Op. at 661–62. But as discussed previously, the State *did* offer evidence that Appellant's actions could have affected Bailey's judgment in rendering services[12]—Appellant promised to pay for the work before it was completed and knew that she did not have sufficient funds, at any point, to follow through. When the construction work was just beginning, and continuing until trial, Appellant's bank account never carried a balance large enough to cover the contract. By the time work began in earnest, Appellant knew that she did not have the money to pay the contract but did not inform Bailey of such. Instead, she continued to spend the money on her personal expenses. And when, a week before the construction was completed, Bailey called Appellant to ensure that she and her husband would have the money to pay him, Appellant assured Bailey that he would be paid. All of these acts occurred before Bailey completed the construction work and conveyed the certificate of occupancy to Appellant. Because there were still services outstanding, Appellant's actions could have affected Bai-

---

11. I disagree with Appellant's argument that the services must have been secured before the contract was executed on April 16, 2008. As long as services were unperformed, those remaining services could be secured through

deception. Therefore, deceptive acts affecting Bailey's judgment could have occurred up until July 10, 2008.

12. TEX. PENAL CODE § 31.01(1).

ley's judgment in rendering services. *See* Tex. Penal Code § 31.01(1). Therefore, a reasonable trier of fact could have found the essential element of deception beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781.

In conclusion, although there exists a variance between the charging instrument and what was proven at trial, the variance involves an immaterial, non-statutory allegation. Moreover, the evidence is legally sufficient to support Appellant's conviction. For these reasons, I respectfully dissent.