

IN THE
TENTH COURT OF APPEALS

No. 10-19-00037-CR

RICHARD TYE WILLIAMS,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 82nd District Court
Robertson County, Texas
Trial Court No. 16-07-20291-CR

MEMORANDUM OPINION

The jury convicted Richard Williams of the offense of aggravated sexual assault

and assessed punishment at 55 years confinement. We affirm.

SUFFICIENCY OF THE EVIDENCE

In the sole issue on appeal, Williams argues that the evidence is insufficient to

support his conviction. The Court of Criminal Appeals has expressed our standard of

review of a sufficiency issue as follows:

When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the

offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

N. G. lived with her father and brother in a home with no electricity or running water. She testified that on April 25, 2005, she came home after dark and changed and got ready for bed. After she got in bed, someone pushed her head into her pillow and crawled on top of her. N.G. testified that she felt something cold pressed up against her neck that she assumed was a knife, and she then felt her clothes being cut off of her. N.G. stated that the man used her clothes to tie her up, and he put her panties in her mouth to keep her quiet. The man then penetrated her sexual organ with his sexual organ. He then told her not to move, and he left out of her window.

N.G. waited and then went to get her brother. Later that day, she went to the police and then to the hospital for a sexual assault exam. N.G. told the police that it could have been T.M. who assaulted her because he had recently been bothering her. T.M. had a large build, and N.G. said her attacker was a large person. N.G. testified that she did not have any further contact with the police until 2015.

The nurse gathered physical evidence from N.G. including blood and saliva samples, hair combings, fingernail clippings, and she assisted in obtaining vaginal swabs. N.G. was "on her period" during the sexual assault, and the nurse removed the tampon N.G. was wearing at the time of the assault and preserved it with the other evidence.

Several years later, the Hearne Police Department received notification from the Texas Department of Public Safety Crime Lab of a match between a DNA profile from a CODIS sample linked to Richard Williams and the DNA profile recovered from a Gatorade bottle found in N.G.'s bedroom. Williams was an acquaintance of N.G.'s father. Investigator Steve Grace, with the Robertson County District Attorney's Office, testified that after receiving the information, he located Williams and obtained a DNA sample from him. Investigator Grace questioned Williams and asked him if it was possible the DNA he collected would match that taken from N.G. Williams replied that it is possible. Investigator Grace asked Williams if it is possible he went into N.G.'s room that night and had sex with her. Williams responded that it was very possible. Investigator Grace also obtained a DNA sample from T.M.

A DNA analyst from the Texas Department of Public Safety Crime Lab testified that the evidence supports Williams as a contributor to the DNA on the Gatorade bottle recovered from N.G.'s room after the sexual assault. The DNA analyst further testified that the DNA from a sperm cell fraction recovered from the tampon string taken from N.G. was consistent with Williams. There was also an epithelial cell fraction from the tampon string that indicated Williams as a contributor. T.M. was excluded as being a contributor to DNA from the sperm cell and the epithelial cell was inconclusive as to T.M.

Williams argues that the jury "could not arrive rationally at a finding of guilt." Williams does not dispute that N.G. was sexually assaulted, but rather contends that the

identity of the person who committed the offense is in dispute. Williams seeks to have this Court use the "equipoise rule" in evaluating the rationality of the jury's findings and argues that the evidence points equally to both him and T.M.

It is the State's burden to prove each element of the offense beyond a reasonable doubt, not to exclude every conceivable alternative to a defendant's guilt. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). The jury heard evidence from a DNA analyst that a sperm cell fraction and an epithelial cell fraction from a tampon worn by N.G. during the sexual assault matched that of Williams. N.G. testified that she never had consensual sexual relations with Williams. Further, Williams gave a statement to the police that is was very possible he went into N.G.'s room that night and had sex with her and also that the DNA sample he provided to the police would match that taken from N.G. The DNA from the tampon string taken from N.G. was consistent with Williams, and it excluded T.M. as a contributor. After viewing all of the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We overrule the sole issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.


JOHN E. NEILL
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
Affirmed
Opinion delivered and filed October 16, 2019
Do not publish
[CRPM]

