# Court of Appeals
## Tenth Appellate District of Texas

10-24-00266-CR
10-24-00268-CR

Erin Bailey Finchum,
Appellant

v.

The State of Texas,
Appellee

On appeal from the
52nd District Court of Coryell County, Texas
Judge Trent D. Farrell, presiding
Trial Court Cause Nos. 22-27692 & 22-27691

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

A jury found Appellant, Erin Bailey Finchum, guilty of the felony offenses of murder and tampering with physical evidence, trial court cause numbers 22-27692 and 22-27691 respectively. The jury assessed her punishment at forty years confinement on the murder charge and ten years confinement on the tampering with physical evidence charge. The trial court sentenced Finchum accordingly and ordered that they run concurrently. This

appeal ensued. Finchum challenges the sufficiency of the evidence on both charges. We will affirm the judgment in the murder charge, and we will reverse and render the judgment in the tampering with physical evidence charge.

## A. Background

In April 2022, Elizabeth Romero's family reported her missing to the Waco Police Department. Her last known location was in Gatesville, where she would visit Betsey and Jessica Robinson. A Waco detective initiated an investigation and was able to determine that Romero's phone last "pinged" at the Robinsons' house on April 2, 2022. Waco then transferred the case to the Coryell County Sheriff's Office to continue the investigation.

Upon initial contact with a Coryell County deputy, Betsey allowed the deputy to walk around the property to ensure Romero was not there. Betsey began making claims that Romero's father had cartel connections, and that Romero may have been killed or may be in El Paso or Mexico.

On May 16, 2022, Jimmy Rutherford contacted law enforcement with information after learning that law enforcement was looking for Romero. At trial, Rutherford testified that he had been at the Robinsons' house on April 1, 2022 to work on a septic tank. While he was at the house, he observed Jessica arrive at the house and start an argument with Romero. During the argument,

Jessica grabbed a knife and held the knife up to Romero's neck. Rutherford helped deescalate the situation and took the knife from Jessica, who continued the argument with Romero. From what Rutherford could hear, Jessica and Romero were arguing about plywood they had taken from a construction site. Rutherford went back outside to continue his work and testified that the argument between Jessica and Romero continued on and off. He stated the argument started up again after dark and Jessica got on the phone with someone. He observed another physical altercation between Jessica and Romero, which he broke up. Around the time Rutherford was finished with his work and preparing to leave, he stated he saw a gun in Jessica's hand. Sometime later, Justin Branham and Finchum arrived at the house, and Jessica came outside to talk to Finchum. Rutherford asked Branham for a ride back to his truck, and they both left the scene. On the drive back to Rutherford's truck, Branham told him that he and Finchum had been home all evening waiting on a phone call from Jessica, and that as soon as Jessica had called, Branham and Finchum got in the truck and came directly over to the Robinsons' house.

On May 19, 2022, Jessica was arrested in connection with an incident involving stolen plywood. Finchum was also arrested on the same day on an outstanding warrant. Finchum, Jessica, and Betsey were all interviewed

regarding Romero's whereabouts. Betsey admitted that an argument had occurred between Jessica and Romero, and that Finchum was present. Jessica later admitted to shooting Romero and led law enforcement to the location of Romero's body on May 20, 2022. After the body was found, Finchum was interrogated by police again and admitted she had been present for the shooting but denied placing a bag over Romero's head and stated she left immediately after the shooting. Finchum, Betsey, and Jessica were all charged in connection with the murder of Romero.

Having already pled guilty to the murder prior to the beginning of Finchum's trial, Jessica testified about the events surrounding the murder of Romero. She testified the argument with Romero started because of an incident on March 31, 2022. An allegation was made that Jessica had stolen some plywood from a local construction site. Jessica admitted to helping Romero take the plywood from the site to another location but that she was unaware they were stealing it. After taking the plywood from the construction site to another location, she dropped Romero off at another friend's house and went home. On the morning of April 1, 2022, Romero woke Jessica up. Jessica then left and went to Finchum's house. While at Finchum's house, Jessica began getting messages about the plywood incident. Jessica testified she received these messages on either Finchum's phone or Branham's phone

because she did not have a phone at that time. Jessica stated that Finchum encouraged her to go back to the Robinsons' house to confront Romero about misrepresenting Jessica's role in the plywood incident. Jessica returned to her house and confronted Romero, which at times became a physical altercation. Jessica stated that sometime after dark, Finchum came over and was sitting next to Romero on the couch while the argument continued. During the confrontation, Jessica retrieved a gun and was holding it in her hand while talking to Romero. She testified there was no reason Finchum would not have been able to see the gun. Right before shooting Romero, Jessica stated she instructed Finchum to move away from Romero, which Finchum did without hesitation or question. After Romero had been shot, Jessica stated that Finchum then put a trash bag over Romero's head, then emptied a tote and helped Jessica put Romero's body into the tote and carried it to the back patio of the house. They discussed Finchum returning with Branham's truck to help dispose of the body, but Finchum never came back to help move the body. Eventually, Jessica moved the body to another location and poured some concrete on or over the body to conceal it.

Betsey also testified at trial about what occurred at her house leading up to and on April 1, 2022. She testified that Jessica and Finchum had been friends for a long time and that Finchum was like a daughter to Betsey. She

also testified that she, Jessica, and Finchum all knew Romero. Jessica and Romero had been accused of being involved in an incident on March 31, 2022, involving stolen plywood. Sometime after the plywood was taken, Romero began exchanging messages with the owner of the plywood. On the morning of April 1, 2022, Romero was at the Robinsons' house and showed the messages to Betsey, who said that Jessica asked her to forward the messages to Finchum's boyfriend's phone so that Jessica would be able to see them since she did not have a phone at that time. During this texting exchange, Jessica alleged that Romero was not disclosing all the of the conversation between her and the owner of the plywood, and Jessica started to get upset. Later in the day, Jessica returned to the Robinsons' house to continue discussing the issue with Romero, which led to them arguing. Betsey told them to take the argument outside, but the argument continued over the course of the day. When it had started to get dark, Finchum was dropped off at the Robinson house by her boyfriend. Betsey testified that it was unusual for Finchum to arrive at the house without calling ahead. Betsey stated that Finchum came into the house with Jessica following behind her. Jessica had been looking at the messages between Romero and the owner of the plywood outside in the truck before she and Finchum came inside. Jessica confronted Romero about the messages and was reading the messages aloud. Betsey testified that

Finchum was involved in the confrontation and was standing next to Romero while Jessica was reading the messages. During the confrontation about the messages, Jessica took out a gun and shot Romero. After Jessica shot Romero, Finchum stomped the ground and yelled, "It's all your fault, you stupid bitch" at Romero. Betsey stated she told Finchum to put a plastic trash bag under Romero to contain the blood. Betsey also testified that sometime later that night or the following morning, Jessica and Cody Ayers, another resident at the Robinsons' house, removed the couch from the house, and Ayers cut it up and burned it because it had blood all over it.

## B. Standard of Review

Finchum argues the evidence was insufficient to support her convictions for both murder and tampering with physical evidence. The Court of Criminal Appeals has defined our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer"

strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732–33 (Tex. Crim. App. 2018).

C. Sufficiency of the Evidence - Murder

In her single issue from trial court number 22-27692, Finchum contends the evidence was insufficient to support her conviction for murder based on both her own conduct and under a theory of the law of parties.

1. Authority

A person commits murder if they intentionally or knowingly cause the death of an individual. TEX. PENAL CODE ANN. § 19.02(b). "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id.* at § 7.01. "Each party to an offense may be charged with the commission of the offense." *Id.* "A person is criminally responsible for an offense committed by the conduct of another if[,] ... acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* at §7.02(a)(2); *In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013).

2. Discussion

Finchum argues that the evidence was insufficient to show that Finchum was criminally responsible for the murder of Romero either by the law of parties or by her own conduct.

Many of the witnesses who testified in this case were only able to testify to portions of the sequence of events leading up to, during, and following the murder of Romero. The only two witnesses able to give a full account of what occurred were co-defendants with Finchum. As such, this case rested heavily on circumstantial evidence and witness credibility. Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13. The evidence presented in this case shows that Finchum and Jessica were very close friends. Betsey testified that Finchum was considered part of the family and stated that Finchum and Jessica would rile each other up. On the morning before the murder, Finchum and Jessica were together when Jessica started getting messages about the plywood theft and Romero's conversations with the plywood owner. Finchum encouraged Jessica to confront Romero about the incident, so Jessica went back to the Robinsons' house and confronted Romero, leading to at least one physical altercation. According to Rutherford's testimony, Finchum and Branham had been waiting on a call from Jessica before going to the Robinsons' house, and Jessica made a phone call not long before Finchum and Branham arrived at the house. Both

Rutherford and Jessica testified that Jessica had a gun in her hand that would have been visible to Finchum before they went back inside to confront Romero again. Multiple witnesses testified that Finchum and Jessica had a conversation outside before they went back inside to confront Romero. Once they were back inside, the confrontation continued and immediately before shooting Romero, Jessica instructed Finchum to move out of the way, which she did without question or hesitation. Betsey testified that immediately after Jessica shot Romero, Finchum yelled "it's all your fault, you stupid bitch" at Romero.

Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). While juries may not speculate about the meaning of facts or evidence, they are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016); see also *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). Considering the foregoing evidence, a rational jury could have found that the cumulative force of the evidence showed that Finchum intended to promote or assist the commission of the murder by soliciting, encouraging, directing, aiding, or attempting to aid Jessica Robinson to commit the murder.

Therefore, viewing the evidence in the light most favorable to the verdict, we cannot say the evidence is insufficient to support the jury's finding of guilt.

Finchum also argues that the evidence was insufficient to show that she was criminally responsible for the murder by her own conduct. Since the evidence was sufficient to support the finding of guilt under the theory of the law of parties, we need not address the alternative theory of guilt by Finchum's own conduct.

Therefore, we overrule Finchum's single issue from trial court cause number 22-27692.

## C. Sufficiency of the Evidence - Tampering

In her single issue from trial court number 22-27691, Finchum contends the evidence was insufficient to support her conviction for tampering with physical evidence, specifically that she destroyed and concealed blood evidence on the couch on which Romero was shot.

1. Authority

A person commits the offense of tampering with evidence if, knowing that an offense has been committed, the person alters, destroys, or conceals a thing with intent to impair its availability as evidence in any subsequent investigation of or official proceeding related to the offense. TEX. PENAL CODE ANN. § 37.09(d)(1).

2. Discussion

We must first determine what the hypothetically correct jury charge would be in this case. The hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240; see also Daugherty, 387 S.W.3d at 665. The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. Daugherty, 387 S.W.3d at 665. The statute requires proof of three elements: the defendant (1) knew an offense was committed; (2) concealed, altered, or destroyed a thing; and (3) intended to impair the availability of that thing as evidence in any subsequent investigation or official proceeding related to the offense. *See Stahmann v. State*, 602 S.W.3d 573, 576 (Tex. Crim. App. 2020). Finchum and the State agree on the language of a hypothetically correct jury charge of the first and third elements but disagree on language of the second element, so we will focus on that language. The State contends the second element should be "alters, destroys, or conceals any thing (blood evidence)," while Finchum argues it should be "destroyed and concealed blood evidence on a couch the decedent was shot on." The indictment read that

Finchum "did then and there knowing that an offense [had] been committed, namely [m]urder, destroy and conceal blood evidence on a couch the decedent was shot on, with intent to impair its availability as evidence in any subsequent investigation or official proceeding related to the offense." The State's interpretation leaves out language from the indictment which should be included in the hypothetically correct jury charge. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). Therefore, the hypothetically correct jury charge, in its entirety, would instruct the jury to find Finchum guilty if (1) knowing that an offense has been committed, namely murder, (2) Finchum destroyed and concealed blood evidence on a couch the decedent was shot on, (3) with the intent to impair its availability as evidence in an investigation.

The State argues that the evidence was sufficient to support the guilty finding because Finchum placed a bag over the victim's head and helped remove the body from the couch and the room. By doing so, Finchum prevented blood and other biological material from getting on the couch and in the room, which the State contends is concealing and destroyed the blood and biological material left behind from the shooting so that it could not be used in the investigation of Romero's disappearance and murder. Based on the language of the hypothetically correct jury charge, the State was required to prove Finchum destroyed or concealed the blood evidence on the couch. Preventing

blood from getting on the couch or other parts of the room is not the same as destroying or concealing the blood evidence that was on the couch. While there is evidence that the blood evidence on the couch was destroyed or concealed when the couch was removed from the house and burned or partially burned, there is not sufficient evidence to suggest that Finchum took part in removing or destroying the couch. Therefore, we hold that the evidence was insufficient to support her conviction for tampering with physical evidence.

We sustain Finchum's single issue on trial court cause number 22-27691.

Conclusion

Having overruled Finchum's single issue on her murder conviction, we affirm the judgment in trial court cause number 22-27692. Having sustained Finchum's single issue on her conviction for tampering with physical evidence, we reverse the judgment in trial court cause number 22-27691 and render a judgment of acquittal in that cause number.

_____
MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED: September 18, 2025
Before Chief Justice Johnson,
     Justice Smith, and
     Justice Harris
Affirmed
Do Not Publish
CRPM

