

# IN THE
# TENTH COURT OF APPEALS

### No. 10-17-00170-CR

**DAVID LEN SIMS,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 13th District Court
### Navarro County, Texas
### Trial Court No. D36869-CR

## MEMORANDUM OPINION

The jury convicted David Sims of the offense of aggravated robbery, and the trial court assessed punishment at 82 years confinement. TEX. PENAL CODE ANN. § 29.03 (West 2011). Sims complains that the evidence is insufficient to support his conviction and that he received ineffective assistance of counsel. Because we find no reversible error, we affirm the trial court's judgment.

#### SUFFICIENCY OF THE EVIDENCE

In the first issue on appeal, Sims complains that the evidence is insufficient to

support his conviction.  The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).  This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232.  Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).  We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).  This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

> We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof

or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Kalyn Comer testified that on May 18, 2016, she was working at the Tiger Tote convenience store in Corsicana, Texas when a man entered the store and pointed a gun at her. The man demanded Comer give him all of the money from the cash register. Comer testified that the man was wearing white gloves, a dark baseball cap, dark clothing, and dark shoes. After Comer gave him the money, the man instructed Comer to get into the store's cooler. From the cooler, Comer saw the man take lottery tickets. After instructing Comer to lay down in the cooler, the man left the store with the cash and the lottery tickets.

Police officers arrived at the convenience store and obtained video of the robbery. Officers also obtained video from a convenience store across the street that showed the suspect leaving the scene in what appeared to be a white Cadillac vehicle. The manager of the convenience store reported the stolen lottery tickets to the Lottery Commission.

Officer Jarrett Girard, with the Corsicana Police Department, responded to the robbery at the Tiger Tote. Officer Girard testified that the day after the robbery he conducted a traffic stop of a white Cadillac. Sims was driving the white Cadillac, and he was the registered owner of the vehicle. At the time of the stop, Sims was wearing a dark

baseball cap and dark colored shoes. Officer Girard issued Sims a warning for the traffic offense, and he was released.

On May 20, 2016, officers received information that someone attempted to claim a prize on one of the lottery tickets stolen from the Tiger Tote. Officers obtained video from the store and identified Sims as the person attempting to claim the lottery tickets. The State further presented evidence that someone tried to claim the stolen lottery tickets at nine locations in Corsicana, and Sims was identified as the person attempting to claim the tickets at some of those locations. A warrant was issued to arrest Sims and after his arrest he was interviewed by officers. Sims denied committing the robbery and told the officers that he found the lottery tickets. Officers obtained a search warrant for Sims's vehicle and residence. Four of the stolen lottery tickets were recovered from Sims's vehicle as well as four failed claim tickets. During the search of Sims's residence, officer found white gloves in the garage.

Sims specifically argues that the evidence is insufficient to support his conviction because the only evidence to support his conviction is the possession of the lottery tickets and he provided a reasonable explanation for his possession of the lottery tickets. The evidence shows that the suspect in the robbery at the Tiger Tote was driving a white Cadillac, and Sims was stopped by police driving a white Cadillac that matched the description. Sims was also wearing clothing that matched that worn by the suspect. Sims was identified attempting to claim the stolen lottery tickets, and the stolen tickets were

located in his vehicle. Sims gave conflicting explanations to the police on how he obtained the tickets, but denied committing the robbery. Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We find that the evidence is sufficient to support Sims's conviction for aggravated robbery. We overrule the first issue.

INEFFECTIVE ASSISTANCE OF COUNSEL

In the second issue, Sims complains that he received ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, appellant must satisfy the two-prong test by a preponderance of the evidence showing that: (1) his attorney's performance was deficient; and (2) his attorney's deficient performance deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Id.* at 687, 104 S. Ct. 2052. In order to satisfy the first prong, appellant must prove, by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. To prove prejudice, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id.*

Sims complains of four instances where his trial counsel was deficient: 1) failing

to review and object to the introduction of States Exhibit 16-A; 2) failing to object to the prosecutor's comments and evidence introduced; 3) failing to object to portions of State's Exhibits 17-A and 17-B; and 4) failing to object to the jury charge or request an instruction on the requirement that extraneous offenses be proven beyond a reasonable doubt.

State's Exhibit 16-A contains video clips from security cameras. Sims contends that these videos were not properly authenticated. The manager of Tiger Tote testified that 16-A contains video from the robbery. Sims's trial counsel took the manager on voir dire to question her about the video. After reviewing the video, the manager stated that it had not been altered and was a fair depiction of what she viewed after the offense. Trial counsel did not object to the admission of the exhibit.

Trial counsel questioned the manager of the Tiger Tote about how busy the store was around the time of the robbery and if it was typical for some stores to be more busy than others. The manager responded that there had been recent robberies in Corsicana and that as a result she had two employees in the store rather than one even during slow periods. The State later elicited testimony from the manager on the string of robberies in Corsicana.

State's Exhibits 17-A and 17-B contained clips of Sims's interview with police officers after his arrest. When the State offered the exhibits into evidence, trial counsel noted that there was information in the exhibits that needed to be redacted. The State agreed and stated that they did not intend to play the videos for the jury.

Sims contends that during the trial the State was able to introduce evidence of extraneous offenses. Sims argues that his trial counsel was ineffective in failing to request an instruction to the jury that they cannot consider any extraneous offenses unless they believe beyond a reasonable doubt that Sims committed the act.

In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Lopez v. State*, 343 S.W.3d at 143. When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Id*. In making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight. *Id*.

In the absence of evidence of counsel's reasons for the challenged conduct, an appellate court commonly will assume a strategic motivation if any can possibly be imagined. *See Ex parte Saenz*, 491 S.W.3d 819, 828 (Tex. Crim. App. 2016). To successfully assert that trial counsel's failure to object amounted to ineffective assistance, the defendant must show that the trial judge would have committed error in overruling such an objection. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

There is no explanation in the record for trial counsel's failure to object to the admission of evidence or to request a jury instruction. Therefore, the presumption of sound trial strategy cannot be overcome. *Id.* We overrule the second issue.

## CONCLUSION

We affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Senior Justice Scoggins[1]
Affirmed
Opinion delivered and filed February 13, 2019
Do not publish
[CRPM]



---

[1] The Honorable Al Scoggins, Senior Justice of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003 (West 2013).