

IN THE
TENTH COURT OF APPEALS

_____

No. 10-19-00075-CR

CORY WAYNE CLAYTON,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

From the 21st District Court
Burleson County, Texas
Trial Court No. 15,187

MEMORANDUM  OPINION

The jury convicted Cory Clayton of the offense of possession of a firearm by a felon.  After finding the enhancement paragraphs to be true, the trial court assessed punishment at 60 years confinement.  We affirm.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue on appeal, Clayton argues that the evidence is insufficient to support his conviction for possession of a firearm by a felon. The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.
>
> We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v.*

*State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Clayton went on a fishing trip with other members of his family to celebrate his father's birthday. While they were fishing, Game Warden Jayme DeSchaaf approached the group and asked for their fishing licenses. Clayton did not have a fishing license, and Game Warden DeSchaaf called dispatch to see if he had prior fishing violations. Game Warden DeSchaaf learned that Clayton had an outstanding warrant from Harris County and called for backup to help take Clayton into custody.

Game Warden DeSchaaf testified that he performed a pat down search of Clayton and found .38 special ammunition in his pocket. Game Warden DeSchaaf testified that Clayton said the bullets were for his father's gun. Game Warden De Schaaf also found what appeared to be methamphetamine in Clayton's wallet. Game Warden DeSchaaf testified that he did not find any fishing hooks, worms, or other fishing gear in Clayton's pockets.

Game Warden DeSchaaf testified that Clayton's father, Randy, told him that he was the owner of the white pickup truck that was there at the scene and that they had all,

including Clayton, traveled together in the white pickup truck. Randy gave Game Warden DeSchaaf permission to search the white pickup truck, and he found a .38 special revolver in the rear backseat of the truck. Game Warden De Schaaf testified that Randy told him Clayton had been sitting in the back seat. Game Warden De Schaaf also found a glass pipe used to smoke methamphetamine in the rear passenger side of the pickup truck next to the revolver. Game Warden DeSchaaf testified that Clayton admitted that the glass pipe belonged to him.

According to Game Warden DeSchaaf, when asked about the revolver, Clayton originally said that it belonged to his father. When Game Warden DeSchaaf told Clayton that his father was a felon and could not possess a firearm, Clayton said the revolver belonged to his wife, Christan Arnold. Christan was not present at the scene at the time of the search.

Officer Daniel Lee, formerly with the Somerville Police Department, testified that he arrived at the scene to assist Game Warden DeSchaaf. Officer Lee testified that Clayton asked him to call Christan and let her know they found a gun in the vehicle. The bodycam video from Officer Lee was played before the jury. During that video, Clayton is heard asking to call his wife and tell her "they got that gun." According to Game Warden DeSchaaf, when Christan arrived some time later she said the revolver did not belong to her.

Clayton testified at trial that he did not ride to the lake in his father's pickup. Clayton said that he and Christan went in their own vehicle, and his niece rode with them. Clayton stated that Randy and his wife Tonya rode in Randy's white pickup along with Clayton's nephew. After they arrived at the lake, they unloaded their fishing equipment. Clayton testified that Randy had a sock filled with bullets in his tackle box. Clayton said that it started raining, and he had to pick up the fishing gear and run for shelter. Clayton grabbed Randy's tackle box, and the contents spilled out. Clayton picked up the contents including the bullets, fishing hooks, and lures, and put them in his pockets.

The rain ended, and according to Clayton, Christan and Clayton's niece returned home to get camping equipment to stay overnight. Clayton and the others walked to the spillway to go fishing. They were approached by Game Warden DeSchaaf and asked to produce a fishing license. Clayton said that Game Warden DeSchaaf discovered that he had an outstanding warrant and searched him pursuant to the warrant. Clayton testified that the game warden found the fishing hooks and lures during the search along with the bullets. After Game Warden DeSchaaf found the gun in the pickup truck, Clayton told the game warden that he did not know that gun was there. He also said he thought it belonged to his father, and the game warden told Clayton that his father is a felon. Clayton testified that he got nervous about his dad going to jail for possessing a firearm,

so he told the game warden to talk to his wife about it. Clayton admitted that the methamphetamine belonged to him and that the glass pipe belonged to him.

Randy also testified at trial that Clayton did not ride with him to the lake and that he never saw Clayton in the back of his pickup truck. Randy stated that when Game Warden DeSchaaf asked if Clayton had been in the truck, he responded that if they leave Clayton will have to ride in the backseat of the truck. Randy testified that he does not recall telling Game Warden DeSchaaf that Clayton had been seated in the backseat of his truck.

To establish that Clayton unlawfully possessed a firearm, the State was required to prove that he was convicted of a felony and possessed a firearm after that conviction and before the fifth anniversary of his release from confinement or release from supervision under community supervision, parole, or mandatory supervision, whichever date is later. *See* TEX. PENAL CODE ANN. § 46.04 (a). Clayton does not dispute that he was convicted of a felony, but argues that the evidence is insufficient to show that he possessed the firearm.

We analyze the sufficiency of the evidence of possession of a firearm by a felon under the standards adopted for establishing the sufficiency of the evidence in cases of possession of a controlled substance. *Majors v. State*, 554 S.W.3d 802, 806 (Tex. App. — Waco 2018, no pet.) Thus, the State must establish "that appellant knew of the weapon's existence and that he exercised actual care, custody, control, or management over it." *Id*.

The State may prove possession through direct or circumstantial evidence, although the evidence must establish that the accused's connection with the weapon was more than fortuitous. *Id*.

When, as here, the accused is not in exclusive control of the place the weapon was found, "there must be independent facts and circumstances linking the accused to the contraband." *Majors v. State*, 554 S.W.3d 802, 807. Affirmative links to the firearm may circumstantially establish an accused's knowing possession of a firearm including, without limitation:  (1) his presence when a search is conducted; (2) whether the firearm was in plain view; (3) whether the firearm was in close proximity to him and he had access to the firearm; (4) whether he had a special connection to the firearm; (5) whether he possessed other contraband when arrested; (6) whether he made incriminating statements when taken into custody; (7) whether he attempted to flee; (8) whether he made furtive gestures; (9) whether he owned or had the right to possess the place where the firearm was found; (10) whether the place where the firearm was found was enclosed; (11) whether conflicting statements on relevant matters were given by the persons involved; and (12) whether his conduct indicated a consciousness of guilt. *Id*. The absence of any of these various links does not constitute evidence of innocence to be weighed against the links present, however. *Id*. Instead, we measure the sufficiency of the evidence by looking to the logical force of all of the evidence, rather than the number of links present in a given case. *Id*.

Although Clayton testified that he did not know the firearm was in the pickup truck, he asked Officer Lee to tell Christan they found "that gun." The jury heard evidence that Clayton was in the back passenger seat of the truck where the gun was located. Game Warden DeSchaaf testified that Randy told him Clayton was in the backseat of the truck and that no one, including Clayton himself, told him Clayton had not been in the pickup truck. The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d at 899.

Clayton was found in possession of .38 special ammunition, and the firearm found in the search was a .38 special revolver. Clayton did not tell Game Warden DeSchaaf at the time of the search that the ammunition belonged to his father. Randy testified that he did not have ammunition in his tackle box. Game Warden DeSchaaf testified that he did not find any fishing lures or hooks in Clayton's pockets.

The firearm was found next to a glass pipe used to smoke methamphetamine. Clayton admitted that the glass pipe belonged to him. Clayton further was in possession of a baggie containing methamphetamine. Clayton gave conflicting statements at the time the firearm was located. He initially stated that it belonged to his father and then that it belonged to his wife. We find that the evidence is sufficient to support Clayton's conviction for possession of a firearm by a felon. We overrule the sole issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.

JOHN E. NEILL
Justice

Before Chief Justice Gray,
    Justice Neill, and
    Justice Johnson
Affirmed
Opinion delivered and filed March 3, 2021
Do not publish
[CRPM]

