

**NUMBER 13-20-00044-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI − EDINBURG**

---

**JOHN MIGUEL EADDY,**                                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

---

**On appeal from the 85th District Court
of Brazos County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina
Memorandum Opinion by Justice Longoria**

Appellant John Miguel Eaddy[1] was indicted on the third-degree felony offense of

violation of a bond/protective order, two or more times within twelve months. *See* TEX.

---

[1] Appellant's name appears as John Miguel Eaddy and John Miquel Eaddy in various parts of the record.

PENAL CODE ANN. §§ 25.07, 25.072. The jury found him guilty, appellant pleaded true to two enhancement paragraphs, and the jury sentenced him to forty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. Appellant argues that a fatal variance exists between "the indictment and what was proven at trial," and therefore, he contends that the evidence is insufficient to support his conviction. We affirm.

## I.     BACKGROUND[2]

The State's indictment alleged that appellant

on or about [the] 11th day of April, 2018, did

during a continuous period that was twelve months or less in duration, namely from on or about the 7th day of April, 2018 through the 16th day of April, 2018, engage in conduct two or more times that constituted an offense under Section 25.07 of the Texas Penal Code, namely:

Did then and there or on about the 11th day of April 2018, intentionally and knowingly violate the terms of an order . . . by intentionally and knowingly going to or near the residence of Savannah Caldwell, a protected individual described in the protective order, namely [Caldwell's residence] , Bryan, Texas.

Did then and there or on about the 15th day of April 2018, intentionally and knowingly violate the terms of an order . . . by intentionally and knowingly going to or near the residence of Savannah Caldwell, a protected individual described in the protective order, namely [Caldwell's residence], Bryan, Texas.

The State subsequently amended the indictment to include two prior felony convictions for punishment enhancement purposes. *See id*. § 12.42(d).

---

[2] This appeal was transferred to this Court from the Tenth Court of Appeals in Waco by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 22.220(a) (delineating the jurisdiction of appellate courts); *id.* § 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

At trial, Rick Hill, Justice of the Peace for Precinct 3 in Brazos County, testified that on April 7, 2018, he issued an order of protection for Savannah Caldwell and A.E.,[3] Caldwell and appellant's minor daughter. Caldwell had been the victim of family violence on April 6, 2018. The order prohibited appellant from contacting Caldwell or A.E. and from going within 100 yards of Caldwell's residence. The order was in effect until May 8, 2018. Hill testified that he had a video conference with appellant, who was arrested for assault-family violence and had been detained in the Brazos County jail until his release on bond. During the video conference, appellant was informed of the charges against him, his bond, and the procedures for obtaining a court-appointed attorney. According to Hill, during that conference, appellant was provided with a copy of the emergency protective order and the conditions of his bond.

Abigail Belangeri, a custodian of records sergeant at the Brazos County Sheriff's Office, testified that she oversees and authenticates emergency protective orders and bond conditions. Copies of both documents with appellant's signature were admitted into evidence. Belangeri further testified regarding the inmate phone system in place at the county jail, explaining that the calls are automatically recorded, the inmate and the person receiving the call are notified that the call is being recorded, inmates use a PIN number to access the phone which connects directly to the inmate's account, and the Sheriff's Office is able to access the recorded calls through an online system. Two calls between appellant and his father were admitted into evidence and played for the jury. In the first call, which occurred on April 8, 2018, appellant indicated that he received a "court order"

---

[3] To protect the identity of the minor child, we refer to her using initials. *See* TEX. R. APP. P. 9.8(b).

saying he cannot go near "her" or "the baby" for thirty days. Appellant was released on bond on April 10, 2018. In the next call, which occurred on June 27, 2018—after appellant was arrested on the underlying charge in this appeal—appellant told his father that he "went to the house." Appellant also stated in the call that he believed he was arrested because he failed to complete a "class."

Officer Chris Johnson with the Bryan Police Department testified that on April 15, 2018, he was called to a disturbance at Caldwell's residence. When Johnson arrived at the residence, there were several people outside of the apartment building, including Caldwell and appellant. At the time he arrived, Johnson did not know who the disturbance call related to. He testified that as he approached the apartment noted in the call, Caldwell approached him and stated that she lived there. Johnson learned that Caldwell's infant daughter was alone inside the apartment, and he turned his focus to the child. Johnson noted that he was unaware of the protective order at that time, and further, he conceded that he neglected to ask some questions of Caldwell regarding the disturbance because he was focused on the safety of the child. Johnson was aware that there had been a previous call-out to the same residence two days prior, when Caldwell reported that appellant had stolen her vehicle.

Subsequent to his conversation with Caldwell, Johnson learned that appellant was involved in the disturbance call. While speaking with a witness, Johnson observed appellant "peeking around a shed at a gas station . . . directly behind [Caldwell's] apartment complex." Johnson had been made aware of the protective order but admitted that he was "confused" as to the procedure for handling violations of protective orders.

4

Appellant told Johnson he was not served with the order and that he was at the apartment to retrieve his belongings. Johnson made the decision not to arrest appellant at that time. A report was generated which was later received by the Criminal Investigations Division for follow-up and a warrant was issued for appellant's arrest.

Caldwell testified that she and appellant were in a relationship for approximately two years, beginning when she was nineteen years old and appellant was thirty-nine years old. The relationship ended in "April/May of 2018." They have one child together, A.E., who was born in February of 2018. She testified that she helped to secure appellant's release from jail and allowed him to stay with her after his release because they had a young baby together and she did not want to be alone. She admitted that she lied to the bondsman about being the victim in the underlying assault case in order to bond appellant out of county jail, and further that she knew appellant was not supposed to be with her at her apartment because of the protective order, but she "didn't want to raise [A.E.] by [herself]."

Caldwell testified that on April 13, 2018, appellant took her car without her permission and she called the police. An officer arrived in response to Caldwell's report regarding her vehicle, and while speaking with Caldwell the officer took notice of appellant's bond paperwork in Caldwell's living room. Appellant did not return to the apartment that day but did eventually return. On April 15, 2018, the police arrived after receiving a disturbance call from a neighbor. Caldwell said she recalls that she and appellant had gotten into an argument and she slammed a door that hit appellant in the forehead. She said appellant then "took off outside" and she eventually went down to talk

5

to him and "that's when the police came." She testified that when the police arrived, the situation had already calmed down and she told the police there had not been a disturbance. She admitted at trial that she lied to police about there not being a disturbance, and further that she knew appellant was not supposed to be with her at her apartment because of the protective order, but she "didn't want to raise [A.E.] by [herself]."

Caldwell's neighbor, Michelle Schutts, testified that she heard arguments, loud voices, and "thuds and stomping" for fifteen to twenty minutes coming from Caldwell's apartment above her own, and she was concerned. She had previously heard that Caldwell had been hit by appellant the week before, so she called 9-1-1. Aside from brief pleasantries exchanged in passing, Schutts had no interaction with Caldwell or appellant.

Appellant was found guilty and pled "true" to two enhancement paragraphs. He was sentenced to forty years' incarceration at the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his sole issue, appellant argues that there was insufficient evidence to support his conviction because (1) "there is a fatal variance between what was alleged in the indictment and what was proven at trial" and (2) "the State failed to prove two or more violations of a protective order."

### A. Standard of Review & Applicable Law

Reviewing courts apply a legal-sufficiency standard in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19,

6

(1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). Under this standard, we examine all the evidence adduced at trial in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *Criff v. State*, 438 S.W.3d 134, 136–37 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). This standard applies to both direct and circumstantial evidence. *Criff*, 438 S.W.3d at 137. Accordingly, we will uphold the jury's verdict unless a rational factfinder must have had a reasonable doubt as to any essential element. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *West v. State*, 406 S.W.3d 748, 756 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

"A 'variance' occurs whenever there is a discrepancy between the allegations in the indictment and the proof offered at trial." *Byrd v. State*, 336 S.W.3d 242, 246 (Tex.

7

Crim. App. 2011). A claim of variance is treated as an insufficiency claim that we review under the legal-sufficiency *Jackson* standard. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001); *see Jackson*, 443 U.S. at 319. A variance that is not prejudicial to an appellant's "substantial rights" is immaterial. *Gollihar*, 46 S.W.3d at 247. "Allegations giving rise to immaterial variances may be disregarded in the hypothetically correct [jury] charge," while "allegations giving rise to material variances must be included." *Id*. at 257. In determining if a variance is material, we ask two questions: (1) "whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial"; and (2) "whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime." *Id*. at 246; *see Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002).

## B.  Analysis

Appellant argues that the indictment alleges a violation "on April 11, 2018" but that the evidence offered at trial proved violations on April 13, 2018 and April 15, 2018. Appellant presents no case law or authority, and we find none, to support his contention that this is a fatal variance requiring acquittal. *See* TEX. R. APP. P. 38.1(i). While the indictment does include "on or about April 11, 2018," it also specifically alleges that appellant "on or about the 7th day of April through the 16th day of April[] 2018, engage[d] in conduct two or more times that constituted an offense under Section 25.07 of the Texas Penal Code. . . ." We find it unnecessary to decide whether the evidence supports that a violation specifically occurred on April 11, 2018, as appellant appears to request. *See*

8

*Klein v. State*, 273 S.W.3d 297, 302 (Tex. Crim. App. 2008). Caldwell's testimony that appellant stayed at her apartment after being bonded out of county jail while the protective order was in place, stole her car on April 13, 2018, and then returned to her apartment after taking the vehicle, coupled with the disturbance call on April 15, 2018 and Johnson's testimony that he spoke with appellant just outside of Caldwell's apartment on that same date, at the very least, supports a finding that appellant violated the terms of the protective order on at least two occasions during the time the order was in place, specifically between April 7, 2018 and April 16, 2018, as charged in the indictment. Thus, to the extent that any variance existed between the date alleged in the indictment and the dates of the offenses as proved by the State, it was not material. *See Gollihar*, 46 S.W.3d at 246–47.

We overrule appellant's sole issue.

### III.    CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
22nd day of April, 2021.