

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00472-CR

John Richard **CARDENAS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR8792
Honorable Jennifer Pena, Judge Presiding

**OPINION ON MOTION FOR REHEARING**

Opinion by:  Irene Rios, Justice

Sitting:  Irene Rios, Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: April 3, 2024

AFFIRMED

On June 28, 2023, we issued an opinion affirming the trial court's judgment. Appellant John Richard Cardenas then filed a motion for rehearing. We deny the motion for rehearing; however, to clarify our opinion, we withdraw our opinion and judgment, and substitute this opinion and judgment in their place.

Cardenas challenges his third-degree felony theft of service conviction, further enhanced by a prior conviction, claiming (1) the evidence is legally insufficient to prove he is criminally

responsible for his business's failure to pay the complainant for its services, (2) he received ineffectiveness assistance of counsel, and (3) the trial court erred in its order of restitution. *See* TEX. PENAL CODE ANN. § 31.04(a)(1), (e)(5). We affirm.

## BACKGROUND

Cardenas was convicted for theft of services in an amount over $30,000 but less than $150,000 after a jury found him guilty of hiring—while never intending to pay—Elegant Limousine & Charter ("Elegant") to provide transportation services associated with a sporting event Cardenas hosted called the "Showcase Bowl." After pleading true to an enhancement alleged in the indictment charging Cardenas with the offense, the trial court sentenced Cardenas to twenty years in prison and ordered him to pay $34,511.75 in restitution to Elegant.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Cardenas asserts the evidence is insufficient to prove he personally stole anything from Elegant. Cardenas contends that he "did not work for a corporation or association, but rather for a *personal limited liability company*, namely: Showcase Athletics, PLLC[;]" and thus, he cannot be held criminally responsible for the acts of his business.

### A. Standard of Review

We review the sufficiency of the evidence to support a conviction under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under that standard, we view all the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

The jury is the sole judge of the credibility and weight to be attached to the witnesses' testimonies. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). In this role, the jury may choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Further, the jury is permitted to draw multiple reasonable inferences from facts as long as each inference is supported by the evidence presented at trial. *Temple*, 390 S.W.3d at 360. When the record supports conflicting inferences, we presume the jury resolved the conflicts in favor of the verdict and therefore defer to that determination. *Id*.

In our review, we consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper*, 214 S.W.3d at 13 (quotations omitted); *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). It is not required that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13. Circumstantial evidence and direct evidence are equally probative in establishing the defendant's guilt, and guilt can be established by circumstantial evidence alone. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13).

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

B.  *Applicable Law*

In Texas, the offense of theft of service under section 31.04(a)(1) requires the State to prove (1) a person; (2) with intent to avoid payment for service he knows is provided only for compensation; (3) secures the performance of the service; (4) by deception, threat, or false token.

*See* TEX. PENAL CODE ANN. § 31.04(a)(1). "Deception," as defined by chapter 31 addressing theft offenses in the Texas Penal Code, means:

(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

(B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;

(C) preventing another from acquiring information likely to affect his judgment in the transaction; [or]

. . . .

(E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

TEX. PENAL CODE ANN. § 31.01(1).

The Texas Court of Criminal Appeals has instructed that when indicting under subsection 31.04(a)—securing performance of the service by deception—"the deception must occur *before* the service is rendered, and that deceptive act must induce the other person to provide the service." *Daugherty v. State*, 387 S.W.3d 654, 659 (Tex. Crim. App. 2013). "The other person must rely upon the defendant's deceptive act in providing the service." *Id.* Stated differently, "[t]heft of service by deception requires that the defendant intend to defraud the service provider before that person provides the service, and the defendant must commit some act of deception . . . that is likely to affect the judgment of the service provider." *Id.*

C.     *Application*

The State indicted Cardenas for securing the services of Elegant through deception alleging Cardenas never intended to pay Elegant when hiring the transportation company to provide

services during the Showcase Bowl. *See* TEX. PENAL CODE ANN. § 31.04(a)(1). Here, it is undisputed Cardenas contacted Elegant and arranged for Elegant to provide transportation services associated with Cardenas's week-long event. Moreover, Elegant undisputedly provided services for compensation. Thus, we must determine whether the evidence sufficiently supports the element that Cardenas deceived Elegant into providing its services while never intending to pay Elegant.

### 1. Theft of Services Offense

Kent Mantle, Elegant's executive partner and general manager, testified that, as is customarily done with new clients, Cardenas completed an account set-up and credit authorization form allowing Elegant to establish an account for Cardenas. Cardenas guaranteed the account with a credit card and his signature. Mantle stated Cardenas did nothing when securing Elegant's services to cause Mantle to think he should get a preapproval on Cardenas's credit card or that Cardenas did not have sufficient funds to pay for the services prior to the Showcase Bowl.

Shortly before the Showcase Bowl event began, Mantle stated he provided Cardenas with a detailed schedule and estimate of costs for Elegant's services for Cardenas's review. Mantle explained Elegant provided substantial services to Cardenas, "about 290 hours' worth of service" during a one-week period. After the conclusion of the Showcase Bowl, Elegant sent Cardenas an invoice detailing the services it provided and requesting $34,511.75 payment for those services. Mantle testified Cardenas's credit card was declined when Elegant attempted to satisfy the outstanding balance with the credit card Cardenas provided when he set up the account. Mantle further explained Elegant then ran the card for half of Cardenas's balance, which was also declined. Elegant continued to run the card for smaller balances, including "down to $100," and none of those amounts were approved. Mantle stated he then contacted Cardenas to discuss his credit card being declined and discuss other payment arrangements. Mantle testified Cardenas explained his funds were tied up because of the expenses associated with the event.

Thereafter, following several unsuccessful attempts to call Cardenas, Mantle text messaged Cardenas inquiring about the outstanding invoice. These text conversations, admitted in evidence, contain times and places where Cardenas and Mantle were scheduled to meet, Cardenas's various excuses as to why he could not meet Mantle, and even Cardenas's claim that his father had died, which was untrue. Mantle testified that after giving Cardenas time to bury his father—or so he thought at the time—they arranged to meet, and Cardenas gave him a check in the amount of $34,511.75. But when Mantle attempted to collect on the check, Cardenas's account had insufficient funds. Mantle explained Elegant eventually turned Cardenas's insufficient check into the hot check department with the district attorney's office.

Multiple other company owners testified to similar experiences with Cardenas in connection with the Showcase Bowl. Kevin Udell, senior vice president of sales for Concourse Team Express, LLC, testified that after placing a sizable order, Cardenas provided him with a check for the required $10,000 deposit. Team Express's accounting department immediately contacted Cardenas's bank to assure the account had sufficient funds to cover the check; the bank confirmed the account had sufficient funds, but when Team Express actually deposited the check, it was returned. Team Express was notified the account had been closed. Udell received another check from Cardenas, but it too was not paid. Despite repeated promises, Cardenas owes Team Express over $47,000.

Similarly, Gilbert P. Rodriguez, III, owner of Texas Silkscreen and Embroidery, testified Cardenas hired him to print several items associated with the Showcase Bowl. Because Cardenas brought Rodriguez the items to be printed rather than Rodriguez ordering them, Rodriguez forewent his customary upfront payment of fifty percent of the print job and began printing the items. However, Rodriguez stated that after printing half of the items at a cost of $7,800 and

releasing them to Cardenas, Cardenas made excuses to avoid paying. Cardenas eventually provided a check that was returned to Rodriguez for insufficient funds.

James Boswell, owner of Screenwerks, testified about ordering and printing additional apparel for Cardenas as well as finishing another print job Cardenas requested—the one Rodriguez's company did not complete due to nonpayment. Boswell also testified he helped pay for a dinner hosted by Cardenas the day before the Showcase Bowl—in the amount of $6,700— after Cardenas promised to pay Boswell back. Cardenas made excuses for not paying Boswell for his goods and services or reimbursing him for the restaurant bill. Cardenas also eventually provided Boswell with a check that was returned for insufficient funds. Boswell testified Cardenas owes him over $11,000.

The evidence sufficiently supports the jury's determination that Cardenas never intended to pay Elegant for its transportation services. Before contacting Elegant, the evidence supports that Cardenas was aware he did not have the funds to pay Elegant for its services as Cardenas had already begun his scheme of nonpayment with other businesses. Nonetheless, Cardenas contacted Elegant and hired it to provide the transportation services for his event. Cardenas approved the preliminary schedule provided by Elegant, including an estimate of costs. Cardenas knew Elegant was providing its services for compensation and secured those services with the intent to avoid paying for them. *See Daugherty*, 387 S.W.3d at 659; *Hooper*, 214 S.W.3d at 13. The testimony from the other business owners who dealt with Cardenas provided additional support in revealing the level of deception Cardenas engaged in while enlisting Elegant to provide services for which Cardenas never intended to pay. *See Hooper*, 214 S.W.3d at 13 (allowing the review of events occurring before, during, and after the commission of the offense to evaluate a common plan to do the prohibited act). Thus, the evidence is legally sufficient to support Cardenas's theft of services conviction. *See Temple*, 390 S.W.3d at 360; *Hooper*, 214 S.W.3d at 13.

*2. Rejection of Cardenas's Contention his Actions are Protected*

We agree with the State that Cardenas's argument that his company, Showcase Athletics, PLLC, shields him from criminal responsibility lacks merit. Cardenas's reference to his company as a personal limited liability company is misplaced. Chapter Five of the Texas Business Organizations Code does not recognize a *personal* limited liability company as a type of business entity. *See generally* TEX. BUS. ORGS. CODE ANN. §§ 5.001–5.065. A "PLLC" indicates a "professional limited liability company." *Id.* § 5.059. Showcase Athletics, PLLC is not a professional limited liability company either, as a professional entity requires necessary state licensure of the individuals providing professional services. *See id.* § 301.003(4), (6), (8).[1] Therefore, Cardenas's company does not protect his actions from criminal responsibility.

We overrule Cardenas's first issue.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Cardenas alleges he received ineffective assistance of counsel because defense counsel failed to (1) file a written and verified motion for continuance because he had retained new counsel to represent him, (2) challenge two objectionable venire members for cause who served on Cardenas's jury, and (3) secure a ruling on Cardenas's objection to Udell, a business owner and prosecution witness, testifying after Udell was allegedly observed "fraternizing" with another witness and a juror during a lunch recess.

*A.     Standard of Review and Applicable Law*

"To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate two things: deficient performance and prejudice." *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim.

---

[1] A "professional limited liability company" means a limited liability company formed for the purpose of providing a professional service, which requires, "as a condition precedent to the rendering of the service, the obtaining of a license in this state, including the personal service rendered by an architect, attorney, certified public accountant, dentist, physician, public accountant, or veterinarian." TEX. BUS. ORGS. CODE ANN. § 301.003(6), (8).

App. 2018). A defendant must show that: (1) his trial counsel's representation fell below the objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's deficiency the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986) (applying *Strickland* to an ineffective assistance claim under the Texas Constitution). "A [reviewing court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669.

"To establish that counsel's actions were deficient, the appellant must show, by a preponderance of the evidence, that counsel's actions fell below an objective standard of reasonableness." *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (citing *Strickland*, 466 U.S. at 687). To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *Compton v. State*, 666 S.W.3d 685, 714 (Tex. Crim. App. 2023) (quoting *Strickland*, 466 U.S. at 687) ("This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.")).

"Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). A court need not address both elements of an ineffective assistance of counsel claim when the defendant makes an insufficient showing as to either element. *Strickland*, 466 U.S. at 697. When evaluating an ineffectiveness claim, courts consider the totality of the evidence. *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010).

*B.      Application*

Applying the foregoing standard of review, we next determine whether Cardenas proved by the preponderance of the evidence his trial counsel's performance was deficient or fell below the standard of reasonableness when considering each of the circumstances.

*1.   Motion for Continuance*

Cardenas complains about his trial counsel's failure to file an additional written verified motion for continuance based on Cardenas retaining new counsel. Immediately prior to trial, Cardenas's counsel requested a continuance to allow for Cardenas's alleged newly hired counsel to assume his representation and prepare for trial. The trial court noted counsel had yet to file an appearance in the case or contact the court on the morning of trial; and therefore, because the case was ready to proceed, the trial court denied the continuance. The trial court went further and admonished Cardenas after claiming his newly retained counsel would appear at trial if the trial court contacted her. The trial court refused to delay the trial, stating if Cardenas hired her, she should be present.

The trial court considered Cardenas's request for a continuance based on his representation that he recently hired new counsel. The trial court denied the continuance for the reasons stated above not because trial counsel failed to file a written verified motion for continuance.

*2.   Challenges During Voir Dire*

Cardenas asserts his trial counsel provided him ineffective assistance of counsel by failing to challenge venire members number 8 and number 31 after they allegedly responded negatively about the presumption of innocence. Specifically, venire member number 8 agreed that if Cardenas did not commit the offense, "he ought to be able to prove it" or "show me some proof that he didn't do what the State's alleging." Venire member number 31 then agreed with defense counsel's

statement that if Cardenas did not present any evidence, call witnesses, or "somehow defend himself," he was presumed "guilty of something."

Nevertheless, shortly thereafter, the trial court thoroughly explained the presumption of innocence, that the burden of proof never shifts to the defendant, that Cardenas has the right to not testify, and if he chooses not to testify, the jury cannot hold it against him. After providing its instructions, the trial court asked of the venire panel who could not follow the trial court's instructions. While several venire members indicated they could not, venire members number 8 and number 31 did not, indicating they could follow the trial court's instructions. Both venire members number 8 and number 31 were seated on the jury without further objection.

The record fails to reflect venire members number 8 and number 31 vacillated or equivocated on their ability to follow the law after it was explained to them. After the trial court explained the presumption of innocence and the State's burden of proof, these venire members did not provide answers raising concerns about their ability to require the State to prove its case.

*3. Exclusion of Witness Testimony*

In Cardenas's last issue alleging ineffective assistance of counsel, Cardenas appears to complain about his trial counsel's failure to prevent Udell's testimony after Udell was observed "fraternizing with another witness and jurors during a lunch recess." Specifically, after a lunch recess, the State notified the trial court that Udell was speaking with a juror about airplanes. Cardenas also reported to the trial court that Udell was "talking to a juror about sports" and Udell's business in front of other jurors in the cafeteria.

The trial court questioned Udell regarding the encounters. Udell stated he did not realize he was speaking with a juror and that he did not know the juror outside of the court setting, but their conversation was general in nature and about aviation. Additionally, Udell explained he spoke about sporting goods generally with someone else but assured the trial court he did not speak about

the case with anyone. The trial court permitted the parties to question Udell. After defense counsel questioned Udell about the details of the conversation he had in the cafeteria, defense counsel objected to Udell testifying.

Next, the trial court questioned the juror who spoke to Udell about aviation. The juror explained that he and Udell did not discuss the case, and their conversation would not influence his decision regarding the case. Neither the State nor defense counsel asked the juror further questions. Defense counsel then informed the trial court that Udell spoke with someone else in the cafeteria other than the juror the court questioned. The trial court stated if defense counsel later identified the other juror, the juror would be questioned. The record does not indicate defense counsel later identified anyone else to the trial court who allegedly spoke with Udell.

Cardenas's trial counsel objected to Udell's testimony, and the trial court addressed this objection by questioning Udell and the juror identified by defense counsel and the State. Udell and the juror assured the parties and the trial court they did not speak about the case. The juror further assured his conversation with Udell would not influence his decisions about the case.

In reviewing Cardenas's specific complaints, nothing in this record rebuts the strong presumption that defense counsel's conduct "fell within the wide range of reasonable professional assistance." *Thompson*, 9 S.W.3d at 813 (citing *Strickland*, 466 U.S. at 669). Cardenas's trial counsel's performance was not "so outrageous that no competent attorney would have engaged in it." *Roberts v. State*, 220 S.W.3d 521, 533–34 (Tex. Crim. App. 2007).

Therefore, the record fails to affirmatively demonstrate that counsel's performance fell below an objective standard of reasonableness. *See Thompson*, 9 S.W.3d at 812. Because Cardenas has not met his burden to prove defense counsel's performance was deficient, his ineffective assistance claim must fail. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); *Thompson*, 9 S.W.3d at 813 (recognizing the failure to make the required showing on either element "defeats the ineffectiveness claim").

We overrule Cardenas's second issue.

### RESTITUTION ORDER

In his third and final issue, Cardenas argues the trial court erred when, during the sentencing hearing, the trial court orally ordered Cardenas to pay restitution "as a condition of his parole once he is released." The trial court further stated: "The restitution is stated in the [presentencing investigation report]." The final judgment of conviction reflects Cardenas owes restitution in the amount of $34,511.75. Cardenas claims there is no evidence in the record, namely the presentencing investigation report (the "PSI"), to support the specifically awarded amount in the final judgment.

Cardenas did not object to the trial court's oral pronouncement of restitution during the sentencing hearing. Therefore, Cardenas "forfeited his complaint." *Garcia v. State*, 663 S.W.3d 92, 97 (Tex. Crim. App. 2022) ("Challenges to restitution orders must be raised in the trial court to preserve them for appellate review.").

Nonetheless, our review of the clerk's record indicates defense counsel was provided the PSI prior to Cardenas's sentencing hearing, and the PSI reflects Cardenas owes Elegant $34,511.75 in restitution. Therefore, even if Cardenas did not waive error, sufficient evidence supports the trial court's award of $34,511.75 in restitution to Elegant in its final written judgment. *See Hanna v. State*, 426 S.W.3d 87, 91 (Tex. Crim. App. 2014) (instructing the amount of restitution "must be just[,] must have a factual basis in the record[,] and it may be ordered only to a victim of an offense for which the defendant is charged").

We overrule Cardenas's third issue.

## CONCLUSION

We affirm the trial court's judgment.

Irene Rios, Justice

DO NOT PUBLISH