

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-17-00061-CR

---

ANTHONY LOSOYA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2016-409,058, Honorable John J. "Trey" McClendon III, Presiding

---

October 18, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

Appellant Anthony Losoya appeals his conviction by jury of the offense of Assault Family Violence by Strangulation[1] and the resulting court-imposed sentence of

---

[1] See TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (West 2018).

imprisonment for a term of fifty years.[2]  On appeal, appellant challenges the sufficiency of the evidence to support his conviction.  We will affirm.

Background

Appellant was charged by a two-count indictment with intentionally, knowingly, or recklessly causing bodily injury to Terry Losoya and to H.G., members of appellant's family and household as described by sections 71.003 and 71.005 of the Family Code, and with intentionally, knowingly, or recklessly impeding the normal breathing and circulation of the blood of Terry Losoya and H.G. by "applying pressure to the throat and neck and/or blocking the nose or mouth of" Terry Losoya and H.G.  The State elected to proceed only on the count alleging the assault on Terry Losoya.  Appellant pled not guilty and the case was tried before a jury.

Terry Losoya[3] is appellant's mother.  At the time of the assault, appellant lived with Terry in Lubbock.  Also living in the house was appellant's brother's girlfriend and her three children, one of whom was H.G.  The evidence showed that in January 2016, appellant assaulted Terry and H.G.  H.G. testified she heard appellant coming down the hallway and when he entered her room, he was angry and wrapped his hands around her neck with pressure.  She tried to "grab" his hands to "try to remove them."  She also yelled, "hoping somebody would come out."  Appellant eventually stopped and later H.G.'s mother and Terry confronted appellant about his attack on H.G.

---

[2] The indictment also alleged appellant had been previously convicted of one felony offense.  Appellant pled "true" to the allegation during the punishment phase of trial, enhancing the applicable punishment range to that of a first-degree felony.

[3] For simplicity, we refer to Terry Losoya by her given name.

A responding officer testified Terry told him that later that night, she was asleep in her bed "when she was awakened by [appellant] choking her and punching her in the face and the head multiple times." Terry was able to get away and call 911. In that call, Terry said, referring to appellant, "he's gonna kill me . . . he's gonna kill me." She was crying and nearly unable to speak. Terry repeated to a fireman and a paramedic that appellant awakened her by choking and punching her. After police and other emergency personnel arrived, Terry was transported to a hospital. Medical records in evidence show Terry told medical personnel that she had been choked or strangled and had neck pain. One of the responding officers noticed redness on Terry's neck, face, and chest area.

## Analysis

Through his sole issue on appeal, appellant contends the evidence presented at trial was insufficient to support his conviction for the indicted offense. As support for his contention, appellant points specifically to the lack of evidence supporting the allegation that he impeded Terry's normal breathing or circulation of blood.

We examine sufficiency issues under *Jackson v. Virginia*, where we view the evidence in the light most favorable to the verdict. *Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op)). We then decide, based on the evidence whether a rational jury could find all the requisite elements beyond a reasonable doubt. *Id.* (citation omitted). We defer to the jury's finding when the record provides a conflict in the evidence. *Id.* (citation omitted). As the factfinder, the jury is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or

none of the testimony presented by the parties. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (the factfinder exclusively determines the weight and credibility of the evidence). Sufficiency of the evidence should be "measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). *See also Daugherty v. State,* 387 S.W.3d 654, 665 (Tex. Crim. App. 2013) (describing hypothetically correct jury charge).

A person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another . . . ." TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2018). The offense is generally a Class A misdemeanor but is elevated to a third-degree felony if: (1) the offense is committed against a member of the defendant's family as described by Family Code Section 71.003; and (2) "the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." TEX. PENAL CODE ANN. § 22.01(b)(2)(B); TEX. FAM. CODE ANN. § 71.003. *See also Price v. State,* 457 S.W.3d 437, 443 (Tex. Crim. App. 2015) (noting that "by applying pressure to the person's throat or neck or by blocking the person's nose or mouth" are manner and means "by which the result—impeding normal breathing or circulation of the blood—may be achieved.")

Appellant challenges only the evidence supporting the jury's finding that he impeded Terry's breath or circulation of her blood. In making his argument, appellant relies on *Woodall v. State,* 376 S.W.3d 134, 140 (Tex. App.—Texarkana 2012, no pet.) and *McEntire v. State,* 265 S.W.3d 721, 724-25 (Tex. App.—Texarkana 2008, no pet.).

4

He contends that like those two cases, the jury in this case engaged in improper speculation rather than making reasonable inferences from the evidence presented. In *Woodall*, there was no evidence at all of penetration in an aggravated sexual assault case. 376 S.W.3d at 140. There was evidence only of contact but no evidence from which the jury could infer penetration. *Id.* Likewise, in *McEntire,* the evidence showed the defendant's mouth made contact with the victim's sexual organ on one occasion but not on four occasions as alleged. 265 S.W.3d at 724-25. We cannot agree with appellant's contention that this case is analogous to those cases.

The State compares this case with another case from this Court, *Carrasco v. State,* No. 07-11-00328-CR, 2012 Tex. App. LEXIS 2792, at *7 (Tex. App.—Amarillo April 9, 2012, pet. ref'd) (mem. op., not designated for publication). There, appellant argued the evidence was insufficient to show that he impeded the victim's normal breathing or blood circulation when he strangled her because the victim testified she could breathe for a majority of the time. *Id.* The prosecution presented evidence of red marks on the victim's neck and also presented medical testimony that those red marks "evinced the presence of 'burst' capillaries where the pressure was applied." *Id.* The Court found that evidence allowed the jury to "reasonably infer that the application of force sufficient to erupt blood vessels or capillaries and cause blood to escape tissue interfered with or hindered the *normal* circulation of the blood, as required by the statute." *Id.* at *8 (italics in original). And, in that case, as is true here, the appellant did not cite any authority suggesting that a person's breathing must be completely stopped for it to be impeded. *See id.* The State argues the evidence here is sufficient to support appellant's conviction just as it was sufficient in *Carrasco.* We agree with the State.

5

Significant in this case was the testimony of Beth Maeker, a nurse offered as a strangulation expert. She explained to the jury the anatomy of the neck and how the carotid artery and jugular vein work together to carry oxygenated blood. She explained this artery and vein are close together, are near the outer skin, and have little protection. She also testified, without objection, that little pressure is required to restrict or impede breathing or blood flow. She said the pressure is less than that required to fire a gun and much less than to shake a person's hand or to open a can of Coke. She also told the jury that victims of strangulation may not realize their blood flow is restricted at the time they are being choked. Maeker testified that even when blood flow is restricted, a person still can breathe and make sounds.

The record contains evidence from which the jury was able to conclude rationally that appellant impeded Terry's breathing or circulation of blood. Terry told the jury she did not remember what happened that night. At one point, Terry testified "I don't remember even being choked."[4] But, she did admit she "probably" told her sister to indicate on forms she filled out for police that she was choked. Terry also later signed an affidavit of non-prosecution. When questioned about the affidavit at trial, she said she loved her son and did not want to press charges. The jury was free to believe the testimony of the police officer, the firefighter, and the paramedic rather than what Terry said during her testimony. *Marshall*, 479 S.W.3d at 845; *Chambers*, 805 S.W.2d at 461.

---

[4] In *Price,* the Court of Criminal Appeals noted "[s]trangulation is sometimes mistakenly called choking. 'Choking' is the internal blockage of the windpipe with a foreign object, such as food, whereas 'strangulation' is the external obstruction of another's breathing or blood circulation either manually or with the assistance of a ligature or other device." *Price,* 457 S.W.3d at 439 n.2 (citation omitted).

Each of those witnesses testified Terry told them appellant woke her up by punching and choking or strangling her. At the hospital, Terry told staff she had pain in her neck.

Terry's statements that appellant choked or strangled her, coupled with the redness on her neck and her neck pain, readily allowed the jury to conclude he did so by applying pressure to her neck or throat. The issue he raises is whether the jury rationally could infer that in doing so he impeded her normal breathing or blood circulation. As noted, we think it significant that the jury in this case heard Maeker's testimony describing the little pressure required to restrict or impede breathing or blood flow. The jury also heard Terry's words and perceived her demeanor during her 911 call, expressing her fear that appellant would kill her. She also told the dispatcher appellant punched her and she was hurting "so bad." From these statements, the jury readily could have concluded appellant used significant force during his assault. Considering that evidence, along with the testimony of the redness of her neck, and the pain that she described to medical personnel, we find the jury's conclusion his choking or strangling his mother impeded her normal breathing or blood circulation was a reasonable inference from the facts shown and not mere speculation.[5] *See Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) (inference is conclusion reached by considering other facts and deducing a logical consequence from them; speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented).

---

[5] Said another way, we hardly see how a rational juror could accept the evidence appellant left his mother fearing for her life and hurting "so bad" but conclude that his "strangling" her, though leaving her neck painful, was nonetheless accomplished with such gentleness neither her normal breathing nor her blood circulation was impeded.

7

From this evidence and viewing the record in the light most favorable to the jury's verdict, we conclude rational jurors could find appellant impeded Terry's breath or circulation of blood by applying pressure to her neck or throat. We find the evidence sufficient to support appellant's conviction, and so resolve appellant's issue against him.

## Conclusion

Having overruled appellant's sole issue on appeal, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.