# Court of Appeals
## Tenth Appellate District of Texas

10-24-00188-CR

James Chadleigh Schrotel,
Appellant

v.

The State of Texas,
Appellee

On appeal from the
County Court at Law No. 3 of McLennan County, Texas
Judge J. Patrick Atkins, presiding
Trial Court Cause No. 2023-0090-CR3

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

A jury found Appellant, James Chadleigh Schrotel, guilty of the misdemeanor offense of assault causing bodily injury. The jury assessed his punishment at 365 days confinement and recommended probation. The trial court sentenced Schrotel accordingly and probated the sentence for a period of 24 months. This appeal ensued.

## A. Sufficiency of the Evidence

In his fifth issue, Schrotel argues that the evidence was insufficient to find him guilty beyond a reasonable doubt of assault causing bodily injury against a family member. Because this issue offers the greatest possible relief, if sustained, we will address it first.

### 1. Standard of Review

The Court of Criminal Appeals has defined our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525

(Tex. Crim. App. 2012).  This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony.  *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).   Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.  *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).   The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013).  The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment.  *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732–33 (Tex. Crim. App. 2018).

2. Authority

A person commits the offense of assault if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse.  TEX. PENAL CODE ANN. §22.01.  Bodily injury is defined as physical pain, illness, or any impairment of physical condition.  TEX. PENAL CODE ANN. §1.07(a)(8).  A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious

objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* A person acts recklessly, or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id.*

3. Analysis

Schrotel argues that no jury could have found him guilty beyond a reasonable doubt of assault causing bodily injury against a family member based on the evidence presented by the State at trial. He specifically points to contradictions between his testimony and Jackie's testimony and argues that Jackie's testimony was not reliable.

Jackie testified that she and Schrotel were married and had a child together. She testified that, on September 2, 2022, she and Schrotel got into an argument that became a physical altercation. She stated that Schrotel grabbed an exercise ball and hit her with it while she was on the ground, which caused her pain. She left the living room and went to the bedroom, but Schrotel followed her and put his hand on her throat. She got away from him and left the bedroom, but Schrotel continued to follow her and eventually pushed her

down in the entryway. She stated that her knees hit the floor first, which caused her pain. Then she felt him kick her on the back of her legs and stomp on her leg, which also caused her pain. Jackie stated that both she and Schrotel went outside, but she returned inside to find her phone and call her mother. While she was on the phone with her mother, Schrotel came back inside, so she hung up the phone and she went back outside to try to deescalate the situation. Jackie testified that Schrotel then came back outside to his truck, so she went back inside to their bedroom and called the police. She stated she stayed on the phone until police arrived about 20 minutes later.

Officer Sabrena Swanton, a police officer with the Waco Police Department, also testified about her involvement with the case. She stated she responded to a report of a domestic disturbance. When she arrived on scene, she and other officers first made contact with Schrotel and asked him what happened. After a brief discussion with Schrotel, Swanton went inside to make contact with Jackie. Swanton stated that Jackie was "visibly frazzled," upset, nervous, and "crying, off and on." Swanton said she did not immediately observe any injuries on Jackie, but that the hallway light was off, so it was dark. Swanton took Jackie's statement about the incident and a description of her injuries. Swanton noticed redness on Jackie's leg that "looked kind of like a semi circle, almost like the heal of a foot." Swanton took

photos of Jackie's injuries. On cross-examination, Swanton was asked if Jackie mentioned being stomped, and Swanton responded that she did not say stomped, but that she did say Schrotel kicked her.

Schrotel also testified about the incident. He stated that he and Jackie were married at the time of the incident and had been experiencing issues in their relationship. While he testified that they argued, Schrotel denied hitting Jackie with an exercise ball, pushing her, punching her, kicking her, or stomping on her leg. He also denied any history of violence. He also stated that he believed Jackie was "baiting" him and wanted to "use this as leverage to scare [him] into getting a very favorable divorce."

There are certainly contradictions between the different witnesses' testimonies, which could lead to conflicting inferences based on the evidence. However, we presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d at 525. This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). There was evidence of each element of the charged offense, and therefore, we cannot say that the evidence was insufficient to support the jury's finding of guilt for the offense of assault causing bodily injury against a family member.

Therefore, we overrule Schrotel's fifth point of error.

## B. Challenge for Cause

In his fourth issue, Schrotel argues that the trial court erred in denying his challenge for cause to venireperson six who could not guarantee that his bias in favor of victims of family violence would not influence his decision.

### 1. Standard of Review

The trial court has broad discretion over the process of selecting a jury. *Allridge v. State*, 762 S.W.2d 146, 167 (Tex. Crim. App. 1988). We review the trial court's overruling of a challenge for cause, under an abuse-of-discretion standard. *Buntion v. State*, 482 S.W.3d 58, 84 (Tex. Crim. App. 2016).

### 2. Authority

A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury. TEX. CODE CRIM. PRO. ANN. art. 35.16. A challenge for cause may be made by either the state or the defense on the basis that the juror has a bias or prejudice in favor of or against the defendant. *Id.*

The test is whether the prospective juror's bias or prejudice would substantially impair the individual's ability to carry out juror duties in accordance with the instructions and oath. *Buntion*, 482 S.W.3d at 84. To establish the propriety of the challenge for cause, the proponent of the

challenge must show that the venireperson understood the requirements of the law and could not overcome the individual's prejudice well enough to follow the law. *Gonzales v. State*, 353 S.W.3d 826, 832 (Tex. Crim. App. 2011). Before a trial court may excuse a venireperson for cause on this ground, the court must explain the law to the venireperson, and inquire whether the venireperson can follow that law, regardless of the individual's personal views. *Id.*

We examine the voir dire of the prospective juror as a whole to determine whether the record demonstrates that the prospective juror's convictions would interfere with the prospective juror's ability to serve as a juror and to abide by the oath. *Buntion,* 482 S.W.3d at 84. In conducting this review, we afford great deference to the trial court's ruling "because the trial judge is present to observe the demeanor of prospective jurors and listen to tones of voice." *Id.* We give particular deference "when the prospective juror's answers are vacillating, unclear, or contradictory." *Id.*

To preserve error on appeal and establish harm, the defendant must (1) use all of the defendant's peremptory strikes, (2) ask for additional peremptory strikes and be denied them, (3) show that the defendant was forced to take an identified objectionable juror whom the defendant would not have accepted had the trial court granted the defendant's challenge for cause or

granted the defendant additional strikes. *Comeaux v. State*, 445 S.W.3d 745, 749 (Tex. Crim. App. 2014).

3. Analysis

Initially, Schrotel asked the jury, based on a show of hands, if the nature of the allegation had anyone "leaning towards just the victim's side, without even hearing anything." Veniremember six was one of a handful of veniremembers to raise his hand.

Following voir dire, the trial court requested each side to make their strikes for cause. Schrotel requested to strike multiple veniremembers, including veniremember six. The State objected that the veniremembers "were not asked could they not uphold the law" and asked that each veniremember be brought back in for additional questioning.

When veniremember six was brought back in, both the State and Schrotel asked him follow-up questions. In response to the State's questions, veniremember six confirmed that he "might lean towards the victim before even hearing the evidence" but also stated he would hear all the evidence before he made a decision. In response to Schrotel's questioning, veniremember six stated that he feels "very strongly about men touching women" due to a family member's experience with domestic violence. Schrotel continued by asking veniremember six whether he "would feel comfortable

having someone like you as your juror" if he were accused. Veniremember six responded:

> I understand, sir. Yeah, I definitely think going into a situation that I'd probably feel one way or another about it, but at the same time, this is seriousness [sic] too. I wouldn't just jump to conclusions. I would weigh all the evidence. I would wait to hear everything and see how it's presented and make my judgment at that time.

Schrotel then asked if veniremember six had any bias, to which he responded that he did and agreed he would probably make a better juror on another type of case. The State then asked again whether veniremember six could wait until he heard all the evidence to decide whether Schrotel was guilty, and veniremember six stated, "I would hear all the evidence before I came to absolute conclusion." Schrotel followed up once again with the following exchange:

> [DEFENSE TRIAL COUNSEL]: Even after hearing all that evidence, you can't assure this Court nor us that that bias wouldn't affect you in some way even evaluating that evidence, isn't that correct?

[VENIREMEMBER SIX]: Sir -- I can't, I mean, bias, I mean, it sits in the back of our mind. I mean, I would hate to say that that's an absolute but, again, I would do my very, very best to sit here and hear everything that was presented and not allow bias to come into play. But, you know, bias is just something that happens from past experience, who we are, it sits in the back of our mind. If we had that much control over it, it'd be easy in life, but we don't.

[DEFENSE TRIAL COUNSEL]: I agree with you one hundred percent. And so there's no guarantee that it wouldn't affect you, isn't that correct?

[VENIREMEMBER SIX]: I would agree with that. I would –

[DEFENSE TRIAL COUNSEL]: I appreciate your honesty so much. I really do.

Following the additional questioning of the other veniremembers, the trial court overruled Schrotel's request to strike veniremember six. Before exercising peremptory strikes, Schrotel renewed his request to veniremember six, which the trial court again denied. Schrotel then requested an additional peremptory strike to use on an objectionable veniremember because he would have to use one on veniremember six. The trial court denied the request for an

additional peremptory strike, and the objectionable veniremember was seated on the jury.

A review of the entire voir dire record of veniremember six reflects that, while he stated that he would try to wait until all the evidence was presented, he ultimately said he would be biased in this type of case and could not guarantee that this bias would not affect him as a juror. *Cf. Buntion*, 482 S.W.3d at 84. Therefore, the trial court erroneously denied Schrotel's challenge for cause.

To establish harm for an erroneous denial of a challenge for cause, the defendant must show on the record that "(1) he asserted a clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of veniremember; (3) his peremptory challenges were exhausted; (4) his request for additional strikes was denied; and (5) an objectionable juror sat on the jury." *Comeaux*, 445 S.W.3d at 749. The record shows Schrotel complied with these steps and therefore established harm for the erroneous denial of his challenge for cause.

Therefore, we sustain Schrotel's fourth issue.

## C. Issues One, Two, and Three

Having sustained Schrotel's fourth issue, we need not address his remaining issues. *See* TEX. R. APP. P. 47.1.

## D. Conclusion

In light of the foregoing, we reverse the trial court's judgment, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

_____

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED: April 16, 2026

Before Chief Justice Johnson,
     Justice Smith, and
     Justice Harris
Reversed and remanded
Do Not Publish
CR25

